J-S15016-16

2016 PA Super 98

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARNELL BROWN, | |
| Appellant | No. 1165 EDA 2015 |

Appeal from the Judgment of Sentence of March 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003322-2013

BEFORE: BENDER, P.J.E., OLSON AND PLATT,* JJ.

OPINION BY OLSON, J.: **FILED MAY 10, 2016**

Appellant, Darnell Brown, appeals from the judgment of sentence entered on March 26, 2015. In this case, we consider whether an autopsy report is testimonial for purposes of the Confrontation Clause. After careful consideration, we hold that the autopsy report in this case was testimonial and the trial court erred in admitting the autopsy report. The trial court also improperly admitted certain expert testimony relating to the opinions expressed in the autopsy report. We hold, however, that the trial court properly admitted expert testimony expressing independent conclusions based on the autopsy report. Accordingly, we conclude that the improper admission of evidence was harmless error and affirm the judgment of sentence.

* Retired Senior Judge Assigned to the Superior Court

The factual background and procedural history of this case are as follows. On the evening of December 9, 2012, Appellant and his co-defendant, Marcus Stokes ("Stokes"), arrived together at a tattoo party taking place on the 2600 block of North Stanley Street in Philadelphia. At approximately 11:30 p.m., Appellant's revolver fell to the ground after which the revolver was placed in the wheel well of a parked car. Approximately 45 minutes later, Appellant started an argument with Cory Morton ("Morton") over the throwing of a tissue. The verbal confrontation escalated to the point where Appellant punched Morton in the face. Appellant thereafter retrieved his revolver and pointed it at a third-party. Morton stated that Appellant would not shoot the third-party. Appellant then stepped back and shot Morton four times in the chest. Morton died as a result of the gunshot wounds.

On March 25, 2013, Appellant was charged via criminal information with murder,[1] possession of a firearm by a prohibited person,[2] carrying a firearm without a license,[3] carrying a firearm on the streets of Philadelphia,[4]

---

[1] 18 Pa.C.S.A. § 2502.

[2] 18 Pa.C.S.A. § 6105(a)(1).

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 18 Pa.C.S.A. § 6108.

possessing an instrument of crime,[5] and conspiracy to commit murder.[6] A jury trial commenced on November 4, 2014 at which Appellant and co-defendant, Stokes, were tried together. At trial, Dr. Albert Chu, an assistant medical examiner,[7] testified as an expert witness as to the cause and manner of Morton's death. Dr. Chu neither assisted nor was present at Morton's autopsy, which was performed by Dr. Marlon Osbourne. Instead, Dr. Chu testified based upon his review of the autopsy report prepared by Dr. Osbourne and the accompanying autopsy photographs. The autopsy report was admitted into evidence at the conclusion of trial.[8]

On November 7, 2014, the jury found Appellant guilty of third-degree murder,[9] carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and possessing an instrument of crime. On March

---

[5] 18 Pa.C.S.A. § 907(a).

[6] 18 Pa.C.S.A. §§ 903(c); 2502.

[7] Philadelphia abolished the position of coroner and replaced it with a medical examiner. Phila. Code § 2-102. The medical examiner in Philadelphia has the same powers and duties as do coroners in other counties of the Commonwealth. *Id.* Throughout this opinion, we refer to "medical examiner;" however, this term is meant to encompass coroners in those counties that retain that office.

[8] The autopsy report was never sent back with the jury. Instead, the parties and the trial court agreed not to initially send any exhibits back with the jury. The parties and trial court agreed to litigate the admissibility of any exhibits if the jury requested them. *See* N.T., 11/6/14, at 8.

[9] 18 Pa.C.S.A. § 2502(c).

J-S15016-16

26, 2015, the trial court sentenced Appellant to an aggregate term of 25 to 50 years' imprisonment. This timely appeal followed.[10]

Appellant presents one issue for our review:

Did the [trial court] err when, over objection, it ruled that [Dr. Chu] could testify as to [the] cause and manner of [Morton's] death when [Dr. Chu] took no part in the original autopsy?

Appellant's Brief at 3.

In his lone issue on appeal, Appellant argues that the trial court erred by permitting Dr. Chu to testify as to Morton's cause and manner of death. Specifically, Appellant argues that the admission of Dr. Chu's testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution as incorporated by the Fourteenth Amendment.[11] Whether Appellant's confrontation rights were violated is a pure question of law; therefore, our standard of review is *de novo* and our scope of review is

---

[10] On April 23, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On June 29, 2015, Appellant filed his concise statement. On July 15, 2015, the trial court issued its Rule 1925(a) opinion. Appellant's lone issue on appeal was included in his concise statement.

[11] "Although Appellant has not premised his argument on Article I, Section 9 of the Pennsylvania Constitution, it similarly provides: 'In all criminal prosecutions the accused hath a right . . . to be confronted with the witnesses against him. . . .'" **Commonwealth v. Yohe**, 79 A.3d 520, 531 n.10 (Pa. 2013), *cert denied*, 134 S.Ct. 2662 (2014) (ellipses in original).

- 4 -

plenary.[12] **_Commonwealth v. Yohe_**, 79 A.3d 520, 530 (Pa. 2013), *cert denied*, 134 S.Ct. 2662 (2014).

As a preliminary matter, the trial court found this issue waived based upon Appellant's alleged failure to timely object to Dr. Chu's testimony. **_See_** Trial Court Opinion, 7/15/15, at 3-4. At trial, however, Stokes' counsel objected to Dr. Chu's testimony based on the fact that it violated the Confrontation Clause. **_See_** N.T., 11/5/14, at 100-101. Appellant's counsel joined in that objection. **_Id._** at 101. Thus, Appellant properly preserved this issue by objecting to Dr. Chu's testimony before the doctor testified at trial.[13] **_See_** Pa.R.Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

Turning to the merits of Appellant's lone issue, the Sixth Amendment of the United States Constitution provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. This protection has been incorporated into the Fourteenth Amendment and thus is applicable in state

---

[12] Although the admission of expert testimony is subject to an abuse of discretion standard of review, **_Commonwealth v. Watson_**, 945 A.2d 174, 176 (Pa. Super. 2008) (citation omitted), an error of law constitutes an abuse of discretion. **_Nat'l Cas. Co. v. Kinney_**, 90 A.3d 747, 753 (Pa. Super. 2014) (citation omitted). Thus, we ultimately employ a *de novo* standard of review.

[13] Although not binding on this Court, the trial court acknowledged at trial that the issue was "preserved for the record." N.T., 11/5/14, at 101.

court prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406-407 (1965). The Confrontation Clause, "applies to witnesses against the accused—in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (internal alteration, quotation marks, and citations omitted).

In order to determine if a document or statement created out-of-court is testimonial in nature, our Supreme Court looks at the primary purpose of the document or statement. *Yohe*, 79 A.3d at 531-532 (citations omitted). A document or statement is testimonial if its primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 531. (citation omitted). A document or statement has such a primary purpose if it is created or given "under circumstances which would lead an objective witness reasonably to believe that the [document or] statement would be available for use at a later trial[.]" *Id.* (citation omitted). If a document or statement is testimonial, then the witness who prepared it must testify at trial, unless he or she is unavailable and the defendant had a prior opportunity for cross-examination. *Michigan v. Bryant*, 562 U.S. 344, 354 (2011) ("[F]or testimonial evidence to be admissible, the Sixth Amendment demands what the common law required: unavailability [of a witness] and a prior opportunity for cross-examination." (internal quotation marks and citation omitted)).

In this case, the fact at issue was whether Morton died from the four gunshot wounds he sustained. The autopsy report admitted into evidence addressed this fact, *i.e.*, it listed Morton's cause of death as being multiple gunshot wounds and the manner of death as homicide. Thus, the autopsy report established past events that were potentially relevant to later criminal proceedings, and thus, was testimonial. Furthermore, an objective witness who prepared an autopsy report on an individual who sustained four gunshot wounds to the chest should reasonably believe that the report would be made available for use at a later trial.

Our conclusion finds support in the statutory scheme governing medical examiners. In Pennsylvania, the medical examiner must issue a certificate attesting to an individual's cause of death "where the circumstances suggest that the death was sudden or violent or suspicious in nature or was the result of other than natural causes[.]" 35 P.S. § 450.503. This is almost always accomplished through performing an autopsy. Although the medical examiner is independent, "[i]n the exercise of his duties as contained in this subdivision, the [medical examiner] shall, so far as may be practicable, consult and advise with the district attorney." 16 P.S. § 1242. Although not all autopsies in Pennsylvania are used in court proceedings, the statutory framework contemplates that the autopsy report will be used in a criminal trial when the circumstances suggest that the death was sudden, violent or suspicious or was the result of other than

natural causes. In this case, the circumstances surrounding Morton's death suggest that his death was sudden, violent and suspicious and not the result of natural causes. A relatively young male died in the middle of the street after being shot multiple times. As such, based upon the statutory framework in Pennsylvania and the circumstances surrounding Morton's death, it is evident that the autopsy report in this case was testimonial in nature.

Several state and federal courts that have recently considered the issue have likewise held that autopsy reports are testimonial. *E.g.*, *United States v. Ignasiak*, 667 F.3d 1217, 1232 (11th Cir. 2012); *West Virginia v. Kennedy*, 735 S.E.2d 905, 917-918 (W.Va. 2012); *United States v. Moore*, 651 F.3d 30, 69–74 (D.C. Cir. 2011) (*per curiam*), *aff'd in part sub nom.*, *Smith v. United States*, 133 S.Ct. 714 (2013); *Cuesta–Rodriguez v. Oklahoma*, 241 P.3d 214, 228 (Okla. Crim. App. 2010); *North Carolina v. Locklear*, 681 S.E.2d 293, 305 (N.C. 2009); *Wood v. Texas*, 299 S.W.3d 200, 209–210 (Tex. Crim. App. 2009); *Massachusetts v. Nardi*, 893 N.E.2d 1221, 1233 (Mass. 2008).

In addition to the reasons set forth above regarding the circumstances surrounding Morton's death and the statutory framework in Pennsylvania, we find persuasive one of the Eleventh Circuit's rationales for concluding that autopsy reports are testimonial in nature. As the Eleventh Circuit Court of Appeals stated, "[m]edical examiners are not mere scriveners reporting

machine generated raw-data. . . . [T]he observational data and conclusions contained in the autopsy reports are the product of the skill, methodology, and judgment of the highly trained examiners who actually performed the autopsy." *Ignasiak*, 667 F.3d at 1232 (internal quotation marks and citation omitted). The Supreme Judicial Court of Massachusetts relied upon a similar rationale in concluding that an autopsy report was testimonial. The court emphasized how most portions of an autopsy report involve judgments and decisions made by the medical examiner performing the autopsy. *Nardi*, 893 N.E.2d at 1232-1233. As such, "there is little reason to believe that confrontation will be useless in testing medical examiners'[] honesty, proficiency, and methodology—the features that are commonly the focus in the cross-examination of experts." *Ignasiak*, 667 F.3d at 1233 (internal alteration omitted).

The Commonwealth contends that the autopsy report in this case was nontestimonial because it was non-accusatorial. This contention appears to rely on Justice Alito's opinion announcing the judgment of the court in *Williams v. Illinois*, 132 S.Ct. 2221 (2012). In *Williams*, a splintered United States Supreme Court held that a DNA report used to compare with a known subject's DNA profile was nontestimonial. In his opinion, Justice Alito stated that the forensic report at issue in *Williams* was nontestimonial because it did not target a specific individual, *i.e.*, the defendant in that case. *Id.* at 2243. Five justices, however, rejected Justice Alito's rationale

and instead found that a forensic report need not accuse a particular individual in order to be testimonial in nature. *Id.* at 2262 (Thomas, J. concurring) (Justice Alito's "test lacks any grounding in constitutional text, in history, or in logic."); *id.* at 2273 (Kagan, J. dissenting) (Justice Alito's test "has no basis in our precedents. We have previously asked whether a statement was made for the primary purpose of establishing past events potentially relevant to later criminal prosecution—in other words, for the purpose of providing evidence."). As a majority of the Court in *Williams* rejected the argument being made by the Commonwealth in this case, the Commonwealth's argument based upon Justice Alito's test in *Williams* is without merit.

The Commonwealth next argues that autopsy reports are nontestimonial because the medical examiner is required to conduct autopsies in a variety of situations, most of which do not ultimately lead to criminal prosecutions. *See* Phila. Code § 2-102; 16 P.S. § 1237. The Commonwealth notes that, in Philadelphia County, approximately 14% of autopsies relate to homicides while the remaining 86% of autopsies are done for some other reason, *e.g.*, the individual will be buried at sea. *See* Commonwealth's Brief at 9, *citing* Medical Examiner's Office Pathology Unit (available at http://www.phila.gov/health/medicalexaminer/Pathology.html, last accessed Dec. 11, 2015).

We reject this argument for several reasons. First, in **Yohe** our Supreme Court held that whether a document or statement is testimonial depends upon its primary purpose. **Yohe**, 79 A.3d at 531-532 (citations omitted). Under Pennsylvania law, "where the circumstances suggest that the death was sudden or violent or suspicious in nature or was the result of other than natural causes" the medical examiner must typically perform an autopsy. **See** 35 P.S. § 450.503. That is what occurred in this case. Thus, under the particular circumstances of this case, it is evident that the primary purpose of the autopsy was not statistical. Instead, the primary purpose of the autopsy report in this case was to prove that Morton died of multiple gunshot wounds and that his death was the result of a homicide.

As we do today, most courts that considered arguments similar to those advanced by the Commonwealth examined the structure of state laws regarding medical examiners and autopsies to determine whether the primary purpose of an autopsy report is to prove a fact for use at trial. We find persuasive the reasoning used by the Supreme Court of West Virginia in **Kennedy** in rejecting the Commonwealth's contention. Like in Pennsylvania, medical examiners in West Virginia are independent. **See Kennedy**, 735 S.E.2d at 917. Nonetheless, in West Virginia the use of autopsies in judicial proceedings is contemplated. **See id.** The Supreme Court of West Virginia relied upon the Eleventh Circuit's decision in **Ignasiak** in reaching its conclusion that autopsy reports are testimonial. In **Ignasiak**,

the Eleventh Circuit held that "even though not all Florida autopsy reports will be used in criminal trials, the reports in this case are testimonial and subject to the Confrontation Clause." *Ignasiak*, 667 F.3d at 1232.

The United States Court of Appeals for the District of Columbia Circuit adopted similar rationale in finding autopsy reports testimonial. In explaining why the autopsy reports were testimonial, the court stated:

> the autopsy reports were formalized in signed documents titled reports . . . . [C]ombined with the fact that each autopsy found the manner of death to be a homicide caused by gunshot wounds, circumstances [existed] which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Moore*, 651 F.3d at 73 (internal quotation marks and citation omitted).

The Court of Criminal Appeals of Oklahoma likewise concluded that an autopsy report is testimonial based upon a similar statutory framework and the nature of the death. That court concluded that "a medical examiner's words recorded in an autopsy report involving a violent or suspicious death could constitute statements that the medical examiner should reasonably expect to be used in a criminal prosecution and therefore under the *Crawford* and *Melendez-Diaz [v. Massachusetts*, 557 U.S. 305 (2009)] framework would be testimonial for Sixth Amendment confrontation purposes." *Cuesta-Rodriguez*, 241 P.3d at 228.

The Court of Appeals of Texas also looked at the structure of state law and the circumstances surrounding the death when determining an autopsy report was testimonial. Specifically, the court concluded that "the

- 12 -

circumstances surrounding [the victim's] death warranted the police in the suspicion that his death was a homicide . . . . Under these circumstances, it is reasonable to assume that [the medical examiner] understood that the report containing her findings and opinions would be used prosecutorially." **Wood**, 299 S.W.3d at 209-210.

All of these courts found it irrelevant that not all autopsy reports are used in criminal prosecutions and that a certain (high) percentage of autopsies are done for other reasons. Instead, they found the fact that the statutory frameworks contemplate using autopsy reports in criminal prosecutions compelling. As noted above, we hold today that the statutory framework in Pennsylvania contemplates using autopsies in criminal proceedings.

We acknowledge that there is a sharp split in authority on whether autopsy reports are testimonial. Indeed, the Commonwealth directs our attention to several state and federal courts that have held that autopsy reports are nontestimonial. **E.g.**, **Tennessee v. Hutchison**, 2016 WL 531266, *16 (Tenn. Feb. 5, 2016); **Ohio v. Maxwell**, 9 N.E.3d 930, 949-952 (Ohio 2014); **Arizona v. Medina**, 306 P.3d 48, 63 (Ariz. 2013); **United States v. James**, 712 F.3d 79, 97-99 (2d Cir. 2013); **Illinois v. Leach**, 980 N.E.2d 570, 592 (Ill. 2012); **California v. Dungo**, 286 P.3d 442, 450 (Cal. 2012).

The Supreme Court of Ohio adopted the rationale advanced by the Commonwealth in this case, *i.e.*, that because autopsy reports have multiple uses, they categorically cannot be considered testimonial in nature. The court specifically held that because autopsy reports are not usually created for use in criminal prosecutions, they do not have the primary purpose of being used as a substitute for out-of-court testimony. *Maxwell*, 9 N.E.3d at 950-952. The Supreme Court of Illinois employed a similar rationale in finding autopsy reports are nontestimonial. The court stated that "while it is true that an autopsy report might eventually be used in litigation of some sort, either civil or criminal, these reports are not usually prepared for the sole purpose of litigation." *Leach*, 980 N.E.2d at 592.[14] The Second Circuit Court of Appeals also adopted a rationale similar to that advanced by the Commonwealth. *See James*, 712 F.3d at 97-99.[15]

---

[14] The court in *Leach* also argued that it was impracticable to require medical examiners to testify regarding autopsy reports. *Leach*, 980 N.E.2d at 592. This argument has been soundly rejected by the Supreme Court of the United States. *Melendez-Diaz*, 557 U.S. at 325 ("The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause—like those other constitutional provisions—is binding, and we may not disregard it at our convenience."). Thus, although forcing medical examiners to testify regarding the findings of an autopsy report may be costly, that does not exempt autopsy reports from the Confrontation Clause.

[15] As we shall discuss *infra*, we reject the conclusions reached in this line of authority. In addition, *James* is distinguishable from the case *sub judice*. In *James*, the Second Circuit noted that the medical examiner did not originally believe a homicide occurred when conducting the autopsy. *(Footnote Continued Next Page)*

We respectfully disagree with the rationale endorsed by these courts and advanced by the Commonwealth. Five members of the Supreme Court of the United States concluded that a similar rationale by Justice Alito in **Williams** was flawed. As Justice Kagan explained, the primary purpose test asks whether a statement "was made for the primary purpose of establishing past events **potentially** relevant to later criminal prosecution." **Williams**, 132 S.Ct. at 2273 (Kagan, J. dissenting) (emphasis added); **see also id.** at 2262 (Thomas, J. concurring). As the Supreme Court of Ohio recognized, the primary purpose of an autopsy is to establish a fact, *i.e.*, the cause of death. This fact is certainly potentially relevant to later criminal prosecutions. It is immaterial that the autopsy was not created for the sole purpose of being used in court.

We also decline to follow the reasoning adopted by several courts that have held that autopsy reports are not sufficiently solemn to meet the test set forth by Justice Thomas in **Williams**. **See Hutchison**, 2016 WL 531266 at *15; **Medina**, 306 P.3d at 64; **Dungo**, 286 P.3d at 449-450. In his concurring opinion in **Williams**, Justice Thomas concluded that the DNA report at issue did not violate the Confrontation Clause because it "lacked

_____
*(Footnote Continued)*

**James**, 712 F.3d at 99. This indicates that the Second Circuit may reach a different conclusion if presented with a case where the autopsy was done because the medical examiner suspected homicide. In the case at bar, it is evident that the autopsy was performed because the medical examiner believed that a homicide was committed.

the requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the Confrontation Clause." **Williams**, 132 S.Ct. at 2255, *quoting* **Bryant**, 131 S.Ct. at 1167 (Thomas, J. concurring). We find this rationale unpersuasive for two reasons. First, in **Yohe** our Supreme Court did not employ Justice Thomas' solemnity test. Instead, our Supreme Court focused on the primary purpose of the evidence, an approach closer to that of Justice Kagan than that of Justice Thomas. **See Yohe**, 79 A.3d 537-538. Second, as noted above, under Pennsylvania law the medical examiner is required to certify the findings of the autopsy report. **See** 16 P.S. § 1244. This is sufficiently solemn to be considered testimonial even under Justice Thomas' test.

Thus, we hold that an autopsy report that is prepared because of a sudden, violent, or suspicious death or a death that is the result of other than natural causes, is testimonial. Such an autopsy report is prepared to prove a fact, *i.e.*, the victim's cause and manner of death, that an objective observer would reasonably believe could later be used in a criminal prosecution. As such autopsy reports are testimonial and the author of the autopsy report is required to testify at trial in order to satisfy the Confrontation Clause.[16] In this case, Dr. Osbourne did not testify and

---

[16] Our holding today is consistent with our Supreme Court's pre-**Crawford** jurisprudence. In **Commonwealth v. McCloud**, 322 A.2d 653 (Pa. 1974), *abrogated on other grounds*, **Commonwealth v. McGrogan**, 568 A.2d 924 (Pa. 1990), our Supreme Court held "that in a homicide prosecution,
*(Footnote Continued Next Page)*

Appellant did not have a chance to cross-examine him prior to trial. Accordingly, Appellant's Confrontation Clause rights were violated by the admission of the autopsy report in this case.

Having determined that the autopsy report was testimonial, we turn to the Commonwealth's contention that Dr. Chu's testimony was independently admissible. Approximately one week prior to trial, Dr. Chu, who testified as an expert with no challenge to his qualifications, reviewed Dr. Osborne's autopsy report as well as photographs taken during the autopsy. N.T., 11/5/14, at 123, 131-132. Based upon this review of the autopsy report and autopsy photographs, the Commonwealth asked Dr. Chu about the cause and manner of Morton's death. The Commonwealth contends that this testimony was admissible as Dr. Chu proffered his own independent conclusions regarding the cause and manner of Morton's death. Appellant, on the other hand, contends that Dr. Chu merely served as a surrogate for Dr. Osbourne and, therefore, his testimony violated Appellant's Confrontation Clause rights.

The reason that Dr. Chu's expert testimony was critical to the Commonwealth's case is because this Court has held that, although non-expert testimony "may be sufficient to establish cause of death by a

_(Footnote Continued)_ ⸻

evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation is impermissible unless the accused is afforded the opportunity to confront and cross-examine the medical examiner who performed the autopsy." **McCloud**, 322 A.2d at 656-657.

preponderance of the evidence, it does not satisfy the more stringent standard of criminal trials." **Commonwealth v. Baker**, 445 A.2d 544, 548 n.2 (Pa. Super. 1982). Thus, in order to prove all the elements of third-degree murder, *inter alia*, that Morton's death was caused by gunshot wounds, expert testimony was required.[17] As Dr. Chu was the only expert called regarding cause of death, we must examine whether he provided sufficient admissible evidence to prove Morton died as a result of gunshot wounds.[18]

In order to understand the background of this issue, it is necessary to review Justice Sotomayor's concurring opinion in **Bullcoming v. New Mexico**, 131 S.Ct. 2705 (2011).[19] In **Bullcoming**, the defendant was charged with aggravated driving while under the influence of alcohol. At

---

[17] The expert testimony need not be offered by a medical doctor. For example, this Court has found sufficient a lay coroner's expert testimony regarding the cause of death. **Commonwealth v. Smith**, 808 A.2d 215, 230 (Pa. Super. 2002).

[18] On the other hand, "a conclusion upon the question whether a death from external cause or violence was accidental, suicidal, or homicidal, may ordinarily be determined by a jury without the assistance of expert witnesses." **Smith**, 808 A.2d at 229 (internal quotation marks and citation omitted). Thus, no expert testimony was necessary to prove the manner of Morton's death.

[19] The Commonwealth states that "**Bullcoming** is a plurality decision[.]" Commonwealth's Brief at 11 n.3. It appears that the Commonwealth meant to state that **Williams** was a plurality opinion. Nonetheless, Justice Ginsburg's opinion in **Bullcoming** was joined by four other justices except as to part IV and footnote 6. **See Bullcoming**, 131 S.Ct. at 2709. As such, it was a majority decision as to all but those portions of Justice Ginsburg's opinion.

trial, the prosecution entered into evidence a forensic laboratory report stating the defendant's blood alcohol concentration was sufficient for aggravated driving while intoxicated. *Id.* at 2709. "[T]he prosecution did not call as a witness the analyst who signed the certification. Instead, the State called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample." *Id.*

The Supreme Court of the United States held that the prosecution violated Bullcoming's Confrontation Clause rights. The Court held that "surrogate testimony . . . could not convey what [the analyst] knew or observed about the events his certification concerned, *i.e.*, the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* Furthermore, the Court explained that the Confrontation "Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Id.* at 2716.

In her concurrence, Justice Sotomayor stated ***Bullcoming*** was

> not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence. As the [majority] note[d], the State [did] not assert that [the surrogate] offered an independent, expert opinion about Bullcoming's blood alcohol concentration. Rather, the State explain[ed that] aside from reading a report that was introduced as an exhibit, [the surrogate] offered no opinion about [Bullcoming's] blood alcohol

- 19 -

content. Here the State offered the BAC report, including [the analyst's] testimonial statements, into evidence. We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence.

**Bullcoming**, 131 S.Ct at 2722 (Sotomayor, J. concurring) (internal alterations, ellipsis, quotation marks, and citations omitted).

The Supreme Court of the United States granted certiorari in **Williams** to decide the expert testimony issue left unresolved in **Bullcoming**. **See Williams**, 132 S.Ct. at 2233 (Alito, J. announcing the judgment of the Court). Unfortunately, the Supreme Court of the United States did not issue a binding rule on this issue in **Williams**. **Medina**, 306 P.3d at 63; **see also Yohe**, 79 A.3d at 536. Thus, we proceed to consider Dr. Chu's testimony by analyzing the various opinions in **Williams** and settled Pennsylvania law.

From the various opinions in **Williams**, we glean that the Confrontation Clause is not violated when an expert expresses his or her independent conclusions based upon his or her review of inadmissible evidence. **Williams**, 132 S.Ct. at 2233 (Alito, J. announcing the judgment of the Court). However, the underlying inadmissible evidence does not become admissible based upon the expert's independent conclusions and his or her reliance on such inadmissible evidence. **See id.** at 2256-2257 (Thomas, J. concurring); **id.** at 2268-2269 (Kagan, J. dissenting). Thus, we turn to Pennsylvania law regarding what evidence an expert can rely upon in order to offer his or her own independent conclusions.

Under Pennsylvania Rule of Evidence 703:

An expert may base an opinion on facts or data in the case that
the expert has been made aware of or personally observed.  If
experts in the particular field would reasonably rely on those
kinds of facts or data in forming an opinion on the subject, they
need not be admissible for the opinion to be admitted.

Pa.R.Evid. 703.

Courts in Pennsylvania have long held that such independent
conclusions based upon inadmissible evidence are admissible.  *E.g., In re
D.Y.*, 34 A.3d 177, 182-183 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848
(Pa. 2012); *Boucher v. Pa. Hosp.*, 831 A.2d 623, 628 (Pa. Super. 2003),
*appeal denied*, 847 A.2d 1276 (Pa. 2004); *Primavera v. Celotex Corp.*,
608 A.2d 515, 519-520 (Pa. Super. 1992), *appeal denied*, 622 A.2d 1374
(Pa. 1993); *Maravich v. Aetna Life & Casualty Co.*, 504 A.2d 896, 900–
901 (Pa. Super. 1986); *Commonwealth v. Thomas*, 282 A.2d 693, 698
(Pa. Super. 1971).

Our Supreme Court addressed a similar situation to the case at bar in
*Commonwealth v. Daniels*, 390 A.2d 172 (Pa. 1978).  In *Daniels*, the
Commonwealth called as an expert witness a forensic pathologist, who had
not originally investigated the victim's death.  The forensic pathologist
consulted the following sources prior to testifying:

interviews with former residents of the school (all of whom
testified for the Commonwealth concerning [the victim's]
symptoms); certain hospital records . . . ; the death certificate
. . . ; a letter from and a conversation with a person who had
performed a dissection of a body believed to be that of the
[victim]; the testimony the [forensic pathologist] heard during

- 21 -

the trial; and certain police reports concerning [the victim's] death. [The forensic pathologist] was asked whether, as a result of this investigation, he had come to an opinion regarding the cause and manner of [the victim's] death. He answered in the affirmative and, over objection, was permitted to testify to that opinion.

*Daniels*, 390 A.2d at 175 (footnote omitted).

Our Supreme Court held that such testimony was admissible. As our Supreme Court stated, "where the information is that of an attending nurse or physician having personal observation and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this." *Id.* at 177 (internal quotation marks and citation omitted). In other words, our Supreme Court held that a medical expert may express his opinion on the cause of death based upon the report of a non-testifying physician who examined the body. *See also Commonwealth. v. Ali*, 10 A.3d 282, 306 (Pa. 2010) ("[A] medical expert who did not perform the autopsy may testify as to cause of death as long as the testifying expert is qualified and sufficiently informed[.]"); *Commonwealth v. Smith*, 391 A.2d 1009, 1012-1013 (Pa. 1978) (permitting pathologist to testify regarding cause of death based upon findings of an autopsy performed by a non-physician).

Based upon this precedent, we hold that Dr. Chu's independent conclusions regarding the cause and manner of Morton's death were admissible. During trial, Dr. Chu testified that it was his own independent conclusion that the cause of death was multiple gunshot wounds and that

the manner of death was homicide. N.T., 11/5/14, at 130. He emphasized that these conclusions were his own and not a mere parroting of Dr. Osbourne's conclusions as set forth in the autopsy report. ***See id.*** Thus, the Commonwealth provided sufficient admissible evidence at trial to prove that Morton's cause of death was multiple gunshot wounds.

Finally, having determined that Appellant's Confrontation Clause rights were violated,[20] we turn to whether this error was harmless. ***See Commonwealth v. Rosser***, 2016 WL 769485, *9 (Pa. Super. Feb. 26,

---

[20] We see two ways in which the Commonwealth violated Appellant's Sixth Amendment rights; first, admission of the autopsy report without testimony from its author, Dr. Osborne; and second, admission of Dr. Osbourne's opinions found in the report. The Commonwealth avers that "Dr. Osbourne's conclusions were never offered against [Appellant.]" Commonwealth's Brief at 13. Instead, the Commonwealth argues that only Dr. Chu's independent conclusions were offered against Appellant. Our review of the trial testimony, however, belies this assertion. At the conclusion of Dr. Chu's testimony, he testified that Dr. Osborne concluded that the cause of death was multiple gunshot wounds and that the manner of death was homicide. Specifically, the Commonwealth asked Dr. Chu, "Is your opinion in this case, are you merely repeating Dr. Osbourne's opinion from the report or through your medical experience and training, do you **also** hold this opinion?" N.T., 11/5/14, at 130 (emphasis added). Dr. Chu responded, "I **also** hold this opinion." ***Id.*** (emphasis added).

This type of basis evidence is the type that five justices in ***Williams*** rejected as violating the Confrontation Clause. It is similar in nature to the surrogate testimony that the Court rejected in ***Bullcoming***. Dr. Chu was, in at least portions of his testimony, acting as a surrogate for Dr. Osbourne and outlining the conclusions Dr. Osbourne drew as a result of the autopsy conducted in this case. As such, we conclude that while the trial court correctly admitted the portions of Dr. Chu's testimony in which he gave his own independent conclusions regarding the cause and manner of Morton's death, the admission of Dr. Chu's testimony which relayed Dr. Osbourne's opinions regarding the cause and manner of Morton's death violated the Confrontation Clause.

2016) (after determining there was a Confrontation Clause violation the second step is to determine if that violation was harmless); ***see also Melendez-Diaz***, 557 U.S. at 329 n.14 (expressing no view as to whether \ Confrontation Clause violation was harmless). "Before a federal constitutional error can be held harmless [on direct appeal], th[is C]ourt must be able to declare a belief that it was harmless beyond a reasonable doubt." ***Davis v. Ayala***, 135 S.Ct. 2187, 2197 (2015) (internal alteration and citation omitted).

This is not a case where the cause of the victim's death was seriously at issue. For example, this is not a cyanide poisoning case in which the testimony of the medical examiner that performed the autopsy was critical to the Commonwealth's case. ***Cf. Commonwealth v. Ferrante***, CP-02-CR-0013724-2013 (C.C.P. Allegheny). Instead, this is a case where a healthy individual in his twenties was shot several times in the chest. Although this Court's precedent requires that an expert opinion be offered to prove the cause of death, extensive expert testimony was not necessary under the specific facts of this case. Instead, Dr. Chu's opinion was sufficient to prove Morton's cause of death beyond a reasonable doubt. Accordingly, we conclude that the admission of the autopsy report and the portions of Dr. Chu's testimony referencing Dr. Osbourne's opinions was harmless error.

In sum, we conclude that Appellant preserved his lone issue for appeal. We hold that an autopsy report is testimonial when the death was

sudden, violent, or suspicious in nature, or was the result of other than natural causes. Because Morton's death was sudden, violent, and the result of other than natural causes, the autopsy report in this case was testimonial and the trial court erred by admitting the autopsy report and Dr. Chu's reference to the opinions expressed by Dr. Osbourne in the autopsy report. Nonetheless, Dr. Chu's independent expert testimony regarding the cause of Morton's death was admissible and sufficient to prove his cause of death beyond a reasonable doubt. Thus, the Confrontation Clause violation was harmless error. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Bender joins this Opinion.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016

- 25 -