J-S36013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH M. AMOOP, :
:
Appellant. : No. 428 EDA 2017

Appeal from the PCRA Order, January 6, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0014293-2007,
CP-51-CR-0014308-2007.

BEFORE: GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED SEPTEMBER 18, 2018**

Joseph M. Amoop appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court, which acted as the fact-finder during Amoop's bench trial, summarized the pertinent facts as follows:

> Desmond McMoore who participated in these crimes with [Amoop] testified pursuant to a plea agreement. McMoore, whom this Court found to be a credible witness, testified that at the time of the crimes [Amoop] and he had been friends for about one year. In the afternoon of June 4, 2007, they were drinking on Camac Street with others. They went to a number of bars and ended up at a bar called the Upper Deck near Germantown and Chelton Avenues in Philadelphia. At approximately 2AM they left in McMoore's two door 1996 Chrysler [Sebring] looking to commit a robbery. They drove passed Baynton and Church [S]treets and saw a large group of people. After turning the corner

McMoore retrieved his gun, a .9 millimeter High Point, from the trunk. [Amoop's] gun, a Tech 9, was under the passenger seat. They then drove back around with the intention to rob all the people on the corner. When the intended victims saw them, the women and two or three males immediately ran. They stopped the car and Eric Christmas, who remained was at the driver's window. McMoore grabbed his shirt and Mr. Christmas threw all of his cash into McMoore's lap. McMoore pulled out his victim's pockets searching for his other items. He pointed his gun at the victim and demanded more. He then fired his gun intending to intimidate the victim. While this robbery was occurring, [Amoop] had left the car to rob the others. [Amoop], who was returning to the car as Mr. Christmas was attempting to run away, confronted the victim near the back of the car. As McMoore heard the victim say, "Ah shit," [Amoop] repeatedly shot Mr. Christmas. [Amoop], who was carrying purses got back into the car and threw the purses into the back seat. [Amoop] told McMoore that the victim tried to shoot him and McMoore then fired two shots at the victim as he lay on the ground. They then drove off.

A few minutes later they stopped at a traffic light at Broad and Lindley Streets. The second victim, Francisco Rodriguez was crossing the street and looking into the car. [Amoop] said to the victim, "What the F are you looking at?" As Mr. Rodriguez kept staring, [Amoop] pulled his gun, pointed it out of the sunroof and repeatedly shot it, striking the victim. They then fled to [Amoop's] house where others eventually joined them, including a woman named [Sharita] Riley.

Eventually McMoore and Sharita left. They went to at least two gas stations to vacuum the broken glass from the shattered back windshield which had been shot out during the robbery. As they arrived at McMoore's house, [McMoore] was stopped by the police and arrested. His gun was seized.

Substantial evidence was introduced corroborating McMoore's version of the events. Other witnesses who were at [Baynton] and Church Streets, coincidently staging an auto accident for purposes of insurance fraud testified consistently with McMoore's version of the incident. One of those witnesses, Amber Anderson identified [Amoop] in a

line-up. Ballistics evidence taken from the scene and from the decedents was consistent with McMoore's testimony. The Medical Examiner's testimony, which identified the causes of death to be gunshots, was consistent with McMoore's testimony. Sharita Riley gave a statement to Detective Donald Marano which was consistent with McMoore's testimony. [At trial Ms. Riley denied the substance of the statement. However, this Court as factfinder credited the detective's testimony and found Ms. Riley's prior statement to be truthful.] Both McMoore's and [Amoop's] fingerprints were found in the car. In addition the Commonwealth presented evidence that [Amoop] was not licensed to carry a firearm.

PCRA Court Opinion, 8/11/17, 2-4 (citation and footnote omitted).

At the conclusion of his bench trial, the trial court convicted Amoop of two counts of first-degree murder and related charges. On June 28, 2010, the trial court sentenced him to an aggregate term of life in prison. On August 2, 2012, this Court affirmed Amoop's judgment of sentence, and, on February 13, 2013, our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Amoop*, 60 A.3d 555 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 63 A.3d 772 Pa. 2013).

On April 9, 2014, Amoop filed a timely *pro se* PCRA petition in which he raised various trial court errors, after-discovered evidence, and multiple claims of ineffective assistance of trial counsel. The PCRA court appointed counsel, and, on November 12, 2015, PCRA counsel filed an amended petition raising only Amoop's claim of after-discovered evidence. Upon motion of both Amoop and PCRA counsel, the PCRA court held a *Grazier*[1] hearing, and

---

[1] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

determined that Amoop wished to proceed *pro se*. On June 6, 2016, the PCRA court granted Amoop $1000.00 to hire a private investigator.

On June 28, 2016, Amoop filed an amended *pro se* PCRA petition, in which he reiterated the claims raised in his first *pro se* petition. Thereafter, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Amoop's petition without a hearing. On October 21, 2016, Amoop filed a timely response. By order entered January 6, 2017, the PCRA court dismissed Amoop's amended petition. This timely appeal follows. Both Amoop and the PCRA court have complied with Pa.R.A.P. 1925.

Amoop raises the following issues in his brief:

I) Did the PCRA Court commit an error of law and fact when it held that [Amoop's amended PCRA petition had] no merit?

II) Did the PCRA Court commit an error of law and fact when it held without [an] evidentiary hearing, [trial counsel] was [not] ineffective for not objecting to expert use and admission of Testimonial Hearsay (autopsy report) authored by another as [the] basis to form his opinion which violated [Amoop's] Sixth and Fourteenth Amendment right under the United States [C]onstitution and Article [I] §9 of [the] Pennsylvania [C]onstitution right to confront adverse witness?

III) Did the PCRA Court commit an error of law and fact when it held without [an] evidentiary hearing, [trial counsel] was not ineffective for failing to get [an] exculpatory statement admitted on the record at trial and was [Amoop] denied Due Process, Equal Protection and Fundamental Fairness where excluded evidence [proved] actual innocence and did [the] trial court apply Hearsay rule mechanistically to deny the [interests] of justice?

IV)     Did the PCRA court commit an error of law and fact when it held without holding [an] evidentiary hearing, [trial counsel] was not ineffective for failing to investigate forensic evidence by not properly cross examining [the] state expert witness and by not consulting and retaining his own ballistics expert that specialize[s] in [the] trajectory of bullet projectiles?

V)      Did the PCRA Court commit an error of law and fact when it held without holding [an] evidentiary hearing, [after-discovered] evidence of actual innocence in the form of [an] affidavit of truth by Jose Lopez held no merit, which stated that state witness [McMoore] admitted to him that his trial testimony was perjured and McMoore was the one who actually committed the murders?

Amoop's Brief at 4-5.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

**Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).  In addition, A PCRA petitioner's right to an evidentiary hearing is not absolute.  **Commonwealth v. Barbosa**, 819 A.2d 81, 85 (Pa. Super. 2003).  Rather, the PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues of material fact, the petitioner is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.

- 5 -

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014). To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, a petitioner must show that he has raised a genuine issue of material fact which, if resolved in his favor, would have entitled him or her to relief, or that the court otherwise abused its discretion in denying a hearing. *Id.*

In his second, third and fourth issues, Amoop raises three separate challenges to trial counsel's effectiveness. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." *Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken." *Stewart*, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a chosen strategy was unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." **Commonwealth v. Tharp**, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. **Commonwealth v. Travaglia**, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Amoop first claims that trial counsel was ineffective for failing to object to the admission of Dr. Gary Collins' testimony regarding the victims' manner and cause of death. According to Amoop, Dr. Collins based his conclusions, at least in part, on his review of the victims' autopsy reports which were authored by another medical examiner who did not testify at trial. Relying on **Commonwealth v. Yohe**, 79 A.3d 520, 539 (Pa. Super. 2013), as well as the United States Supreme Court's decisions discussed therein, Amoop argues that "the introduction of such a report at trial may occur only when the testifying witness is the person who prepared the report, observed the examination for which the report arose, actively supervised its preparation and completion and is subjected to cross-examination." Amoop's Brief at 11.

Amoop then argues that "because the autopsy report and the toxicology report [sic] in this case at hand was introduced by a witness who met none of the [**Yohe**] criteria, its direct use at trial violated [his] confrontation guarantee." **Id.** In addition, Amoop argues the "constitutional analysis is no different when an expert reads the report and makes it the basis for his new conclusion." **Id.** According to Amoop, "[u]se of testimonial hearsay to establish a conclusion deprives an accused of the same confrontation guarantee." **Id.**

The PCRA court found no merit to Amoop's claim:

> Dr. Collins did not perform the actual autopsy. The autopsy was performed by Dr. Bennett Preston. Photographs were taken during the autopsy, samples were taken, tests were performed and reports were written. The record is clear that, prior to reaching his own conclusions, Dr. Collins reviewed all of the work previously performed. Dr. Collins' conclusions as to the cause and manner of death, although consistent with those reached by Dr. Preston, were reached independently, after a thorough review of the evidence. Accordingly, there was no basis to object to this testimony. **See Commonwealth v. Thomas**, 282 A.2d 693 (Pa. 1971)[.]

PCRA Court Opinion, 8/11/17, at 6. We agree.

This Court confronted a similar factual circumstance in **Commonwealth v. Brown**, 139 A.3d 208 (Pa. Super. 2016). There, a panel of this Court first considered "whether an autopsy report is testimonial for purposes of the Confrontation Clause." **Brown**, 139 A.3d at 210. "After careful consideration," the panel held that "the autopsy report in this case was testimonial and the trial court erred in admitting the autopsy report." **Id.** The

- 9 -

*Brown* panel further held that the "trial court also improperly admitted certain testimony relating to the opinions expressed in the autopsy report." *Brown*, 139 A3d at 210. Nevertheless, the *Brown* panel affirmed Brown's judgment of sentence, because the "trial court properly admitted expert testimony expressing independent conclusions based on the autopsy report[,]" and concluded the improper admission of the improper evidence was harmless error. *Id.*

In reaching this conclusion, the *Brown* panel summarized:

> We hold that an autopsy report is testimonial when the death was sudden, violent, or suspicious in nature, or was the result of other than natural causes. Because [the victim's] death was sudden, violent, and the result of other than natural causes, the autopsy report in this case was testimonial and the trial court erred by admitting the autopsy report and Dr. Chu's reference to the opinions expressed by Dr. Osborne in the autopsy report. Nonetheless, Dr. Chu's independent expert testimony regarding the cause of [the victim's] death was admissible and sufficient to prove [the victim's] cause of death beyond a reasonable doubt. Thus, the Confrontation Clause violation was harmless error.

*Brown*, 139 A.2d at 220.

In affirming this Court's decision, our Supreme Court unanimously agreed that autopsy report was testimonial, and that the admission of it without accompany testimony from its author violated Brown's rights under the Confrontation Clause. *See Commonwealth v. Brown*, 185 A.3d 316, 324-29 (Pa. 2018).

Further, all of the Justices agreed that its admission in Brown's case was harmless error, albeit for different reasons. Justice Dougherty, joined by Justices Baer and Todd, agreed with the **Brown** panel that Dr. Chu's independent expert testimony rendered the admission of the autopsy report harmless. In a Concurring Opinion, joined by Chief Justice Saylor and Justice Wecht, Justice Donahue disagreed; based on her review of the record, Dr. Chu's testimony could not be separated from the conclusions reached by the autopsy's author. She nevertheless found that any error was harmless because Pennsylvania precedent establishes that "medical testimony is not required to establish causation in a murder prosecution." **Brown**, 185 A.3d at 340 (citation omitted) (Donohue, J., concurring). According to Justice Donahue, even in the absence of the autopsy report and Dr. Chu's testimony, "there was competent evidence presented at trial to a jury to justifiably conclude, beyond a reasonable doubt, that the victim died as a result of the gunshot wounds." **Id.** In a separate Concurring Opinion, Justice Mundy opined that any error that occurred was harmless "only because the autopsy report and its accompanying testimony did not affect the outcome of Brown's trial in light of other non-expert witness testimony as to the cause and manner of [the victim's] death." **Brown**, 185 A.3d at 342 (Mundy, J., concurring).

Here, the PCRA court concluded that Dr. Collins reached his own independent conclusions about the cause and manner of the victim's death. We agree. Moreover, even if this was incorrect, the admission of such expert medical testimony was nonetheless harmless. Our review of the record

establishes that the non-expert testimony of the various Commonwealth witnesses who saw the shooting and the condition of the victim immediately thereafter, gave the trial court, as fact-finder, sufficient evidence to determine the cause and manner of the victims' death beyond a reasonable doubt. ***See Amoop***, ***supra***, unpublished memorandum at 5-7. Thus, trial counsel cannot be deemed ineffective for failing to pursue this meritless claim. ***Loner***, ***supra***.

In his next claim, Amoop asserts that trial counsel was ineffective for failing to ensure an alleged exculpatory statement by an eyewitness who died prior to trial was admitted into evidence. Amoop concedes that the trial court denied his counsel's attempt to introduce the hearsay statement because it did not fit within the "excited utterance" exception. Amoop's Brief at 27. Nevertheless, Amoop contends that trial counsel "abandoned him when he gave up on its admission after the denial by [the] trial court," because "trial counsel never once argued that the evidence was exculpatory or that it showed that the crime was committed by someone else." ***Id.*** at 30.

It is well settled that the admissibility of evidence is a matter left to the sound discretion of the trial court and may be reversed only upon a showing that the court abused that discretion. ***Commonwealth v. Shelton***, 170 A.3d 549, 552 (Pa. Super. 2017). Here, the trial court sustained the Commonwealth's hearsay objection because it determined that the statement at issue lacked "the necessary indicia of reliability." PCRA Court Opinion, 8/11/17, at 6. Trial counsel cannot be deemed ineffective because his attempt

to introduce the statement was unsuccessful. ***Buksa***, ***supra***. Further we note that, although Amoop takes issue with the trial court's application of the "excited utterance" exception in his brief, he did not raise the issue in his direct appeal. Thus, this claim is waived and, therefore, does not entitle Amoop to relief. ***See*** 42 Pa.C.S.A. § 9544(b).

In his last claim of ineffective assistance of counsel, Amoop claims that trial counsel was ineffective "for failing to investigate the medical and forensic evidence, consult with and retain experts and present expert testimony or properly cross-examine the Commonwealth's expert[.]" Amoop's Brief at 16 (excess capitalization omitted).

Although Amoop raised this claim in his Rule 1925(b) statement, the PCRA Court did not address it in its Rule 1925(a) opinion. The Commonwealth contends that the issue is waived because Amoop failed to raise it in his original or amended *pro se* PCRA petitions. ***See*** Commonwealth's Brief at 13 n.2. Although our review of the record reveals that Amoop did make reference to such claim in both of his petitions, the manner in which he did so renders the claim without merit.

Before an evidentiary hearing will be granted, a PCRA petitioner "must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective." ***Commonwealth v. Begley***, 780 A.2d 605, 635 (Pa. 2001) (*quoting* ***Commonwealth v. Pettus***, 424 A.2d 1332, 1335 (Pa. 1981).

Amoop made no such proffer. Although within his brief, he discusses **his** disagreement with the ballistics and other evidence presented by the Commonwealth, he proffers no evidence that a different ballistics expert would support his conclusions.[2] In the absence of a sufficient proffer, "a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a 'fishing expedition' for possible exculpatory evidence." **Commonwealth v. Clark**, 961 A.2d 80, 94 (Pa. 2008). Thus, Amoop's final claim of ineffectiveness fails.

In his final issue, Amoop argues that the PCRA Court erred in denying his after-discovered evidence claim, in the form of an affidavit, from Jose Lopez, a fellow inmate. According to Mr. Lopez's affidavit, McMoore told Lopez that he actually committed the murders, and that Amoop was not present.

A petitioner is eligible for relief under the PCRA if he or she can establish the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). This Court has explained the test to be applied to such a claim as follows:

> To obtain relief based on after-discovered evidence, an appellant must demonstrate that the evidence: (1) could

---

[2] As noted above, the PCRA court granted Amoop $1,000 dollars to hire a private investigator. There is no indication in the record that Amoop used these funds to hire his own expert.

not have been obtained prior to the conclusion of trial by the exercise of reasonable due diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (citation omitted). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Id.*** Moreover, "when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case." ***Id.***

Here, the PCRA court explained why, having acted as fact-finder at Amoop's bench trial, Amoop's proffered affidavit "would not likely have resulted in a different verdict if a new trial were granted." ***Foreman***, ***supra***. It stated:

> In a brief affidavit Mr. Lopez stated that on November 18, 2013, [McMoore] told Mr. Lopez McMoore committed the killings and gave [Amoop], "All the credit for it." We emphasize that this Court sat as fact finder. As stated above, McMoore's testimony was corroborated by the other evidence in the case, made sense and was credible. Even if this Court heard evidence of an alleged recantation, six years after the killing, the verdict would not have changed. Accordingly, this Claim, too is baseless.

PCRA Court Opinion, 8/11/17, at 6.

In essence, the PCRA court did not find Lopez's proffered affidavit credible. When considering alleged after-discovered evidence, such credibility considerations are properly part of the determination of the integrity of the proffered evidence, and, therefore, whether the proposed evidence would have resulted in a different verdict. *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010). Here, given that the PCRA court sat as the original fact finder, we cannot disturb this determination. *See Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court). Thus, Amoop's claim is meritless.

In sum, because all of Amoop's ineffectiveness claims are meritless, and the PCRA court properly rejected Amoop's alleged after-discovered evidence, we affirm its order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/18