J-A01029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL MILLER | : | |
| | : | |
| Appellant | : | No. 1014 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004971-2018

BEFORE: BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OLSON, J.: **FILED APRIL 15, 2021**

Appellant, Nathaniel Miller, appeals from the February 6, 2020 judgment of sentence imposing life imprisonment without parole and a concurrent, aggregate 3½ to 7 years' incarceration after a jury convicted Appellant of first-degree murder, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, Pennsylvania, and possession of an instrument of crime.[1] Counsel for Appellant, James F. Berardinelli, Esquire ("Attorney Berardinelli"), also filed a motion to withdraw averring that he is prohibited from continuing to represent Appellant in this matter due to a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, and 907(a), respectively.

conflict with his current employment.[2]  We grant Attorney Berardinelli's motion to withdraw and affirm Appellant's judgment of sentence.

A review of the record demonstrates that on February 6, 2020, a jury convicted Appellant of the aforementioned crimes stemming from the shooting death of the victim.  That same day, the trial court sentenced Appellant to life imprisonment without parole for his first-degree murder conviction, as well as 3½ to 7 years' incarceration for carrying a firearm without a license and 1 to 2 years' incarceration for carrying a firearm on public streets of Philadelphia.  No further penalty was imposed for possession of an instrument of crime.  The trial court imposed Appellant's term-of-years sentences to run concurrently to Appellant's life sentence.

Appellant filed a post-sentence motion on February 13, 2020, which the trial court subsequently denied.  This appeal followed.[3]

Appellant raises the following issue for our review:

> Did the [trial] court err in permitting [the] Commonwealth expert[, Detective] Thorston Lucke[,[4]] to testify as to hearsay

_____

[2] Attorney Berardinelli avers that in December 2020, he became Chief of the Appellate Unit for the Montgomery County Public Defenders' Office and, as such, is prohibited from further representing Appellant in this matter.  **See** Motion to Withdraw, 11/22/20.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

[4] Detective Lucke was accepted at trial as an expert in video analysis and recovery upon stipulation by the parties and following direct *voir dire* of his qualifications before the jury. N.T., 2/5/20, at 100-101.

statements [made by Detective] James Sloane regarding the time off-set of video evidence presented where such statements were not merely a factor upon which the expert formed his opinion but rather were introduced for the sole purpose of establishing the existence of the time off-set listed on the reports?

Appellant's Brief at 3.[5]

Appellant's issue challenges the admissibility of evidence for which our standard of review is well-settled.

Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment[,] that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

Pennsylvania Rule of Evidence 703 states,

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

---

[5] We direct Appellant's counsel to Pennsylvania Rule of Appellate Procedure 2135(c), which requires that lettering be no smaller than 14-point font in the text of the brief. Pa.R.A.P. 2135(c); ***see also*** Pa.R.A.P. 124.

Pa.R.E. 703. "If an expert states an opinion[,] the expert must state the facts or data on which the opinion is based." Pa.R.E. 705. Pennsylvania courts have long-permitted "an expert witness to rely on, and disclose, data which is not in evidence in order to form his[, or her,] expert opinions, assuming the materials relied on are of the type reasonably relied on by experts in their respective fields." **Primavera v. Celotex Corp.**, 608 A.2d 515, 518 (Pa. Super. 1992), *citing* **Commonwealth v. Thomas**, 282 A.2d 693, 698-699 (Pa. 1971), *appeal denied*, 622 A.2d 1374 (Pa. 1993); **see also Commonwealth v. Brown**, 139 A.3d 208, 218 (Pa. Super. 2016) (reiterating, that an expert's independent conclusions based upon inadmissible evidence are admissible), *aff'd*, 185 A.2d 342 (Pa. 2018); **Adams v. Rising Sun Med. Ctr.**, ___ A.3d ___, 2020 WL 7705969, at *11 n.13 (Pa. Super. Filed December 29, 2020) (slip opinion) (stating, that an expert may express a conclusion or opinion that is based upon material not in evidence "where such material is of a type customarily relied on by an expert in his, or her, profession and he, or she, is not acting as a mere conduit of the [material not in evidence]").

The rule governing expert testimony is born, in part, out of the premise that "the expert is assumed to have the mastery to evaluate the trustworthiness of the data upon which he[,] or she[,] relies, both because the expert has demonstrated his[, or her,] expert qualifications and because the expert regularly relies on and uses similar data in the practice of his[,] or her[,] profession." **Primavera**, 608 A.2d at 519. The data relied upon by the

expert in reaching his, or her, conclusions and opinions must be "the kind of data used daily by experts in making judgments, reaching diagnoses, and taking action." *Id.* at 519-520. "[T]he rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the sound discretion of the trial court." *Id.* at 521.

At trial, the Commonwealth offered the expert testimony of Detective Lucke in the field of video analysis and recovery to establish Appellant's presence at the scene of the shooting. In turn, the opinions offered by Detective Lucke relied, in part, on observations relating to differences between the time-stamp appearing on the surveillance video and so-called "real time."[6] This time differential information was relayed to Detective Lucke through a report prepared by Detective Sloane. On appeal, Appellant contends that the trial court erred in permitting Detective Lucke to testify regarding a 5 minute and 55 second off-set or difference between the time depicted on the surveillance video and the "real time" as noted by Detective Sloane at the moment the surveillance video was recovered. Appellant's Brief at 10. Appellant asserts that Detective Lucke acted as "a conduit for Detective

_____

[6] Detective Lucke described "real time" as the actual or official time as determined by, and obtained from, "a series of atomic clocks at [the United States] Naval Observatory in Washington D.C." N.T., 2/5/20, at 105. We take judicial notice that the United States Naval Observatory "serves as the official source" of "a standard of time for the entire United States." *See* https://www.usno.navy.mil/ (visited, 3/19/21).

Sloane's extrajudicial conclusion" that the time depicted on the surveillance video was 5 minutes and 55 seconds behind the real time. *Id.* Appellant argues that, the Commonwealth was required to present the testimony of Detective Sloane, and not simply rely upon Detective Lucke's recitation of underlying data, in order to introduce into evidence this off-set of time between the time-stamp on the surveillance video and the real time. *Id.* Appellant asserts that, without the off-set of time evidence, Appellant's "[ankle] monitor did not place him at the scene [of the shooting] at the time the shooting was depicted in the [surveillance] video." *Id.*

In permitting Detective Lucke to testify regarding the off-set of time between the time depicted on the surveillance video and the real-time, the trial court explained,

> At trial, Detective Lucke testified that, according to Detective Sloane's report, the time off-set between [the] real-time and the time as it [appeared on the surveillance video] was five minutes[ and] fifty-five seconds. Detective Sloane made this determination by comparing the time as it appeared on [the surveillance video] to the actual time [recorded] by the United States Naval Observatory's [a]tomic [c]lock, a technique Detective Lucke teaches and frequently uses in his own investigations. While this statement appears to be inadmissible hearsay on its face, [within] the context of Detective Lucke's expert testimony, the statement was a fact upon which Detective Lucke formed his expert opinion.
>
> In examining Detective Lucke's testimony as a whole, it is clear that he was called to [testify] for the [] purpose of establishing that the [] surveillance [video] recovered from the [minimart depicted] the sequence of events occurring outside the [minimart] immediately before and after the instant homicide. The [surveillance] video in question clearly shows [Appellant] approaching the location of the shooting, wearing clearly identifiable boots and an ankle monitor, before moving

- 6 -

off-camera. The same [surveillance video] captured [Appellant] fleeing the scene, still identifiable by his boots and ankle monitor but now carrying a firearm, eighteen seconds after he first disappear[ed] from view.

However, the time[-]stamp as it appeared on the [surveillance] video did not comport with the time as demonstrated by the other evidence presented by the Commonwealth. Because of this, Detective Lucke utilized the hearsay evidence of Detective Sloane's [report regarding] the time off-set, as is permissible by experts, to help form his opinion. Detective Sloane's technique in using the United States Naval Observatory's [a]tomic [c]lock to determine the actual time [the video was recorded] is a regularly used practice in the field of [] surveillance [video] recovery. Detective Lucke employs the exact same technique in resolving timing discrepancies appearing on surveillance [video] in virtually all of his own investigations.

Moreover, Detective Lucke based his time off-set analysis on additional, overwhelming evidence demonstrating that the [surveillance video] captured the instant shooting [and] not some unrelated, earlier event. There was no other shooting in the area of 67th Avenue and [North] 16th Street[, in Philadelphia, Pennsylvania,] on the date of the homicide that could have been mistaken for the instant shooting. Further, when reviewing the [] surveillance [video] recovered from the [minimart], Detective Lucke had the benefit of also reviewing geolocation data recovered from [Appellant's ankle] monitor[.]

When cross-referencing the geolocation data with the recovered surveillance [video], as demonstrated by Detective Lucke's video compilation, it is readily apparent that images of [Appellant] moving towards[,] and then fleeing [from,] the scene [of the homicide] match the uncontroverted geolocation evidence when the five minute[ and] fifty-five second time off-set is applied. [The] geolocation data [from Appellant's ankle monitor] recorded not only [Appellant's] location at a certain time - placing him at the scene of the crime - but also recorded his speed and direction of movement. Between 7:22 p.m. and 7:23 p.m., both [the geolocation data from Appellant's ankle] monitor and the off[-]set [] surveillance [video] depict[ed Appellant] walking towards the scene of the shooting at a speed of 3 [miles per hour ("mph")]. It is undisputed that, at 7:24 p.m., [Appellant's] ankle monitor was moving eastbound on 67th Avenue at 6 mph in the immediate aftermath of the shooting. This was confirmed by the off[-]set

[surveillance] video [], which depicted [Appellant] running away from the shooting location in an eastward direction, while wearing [an ankle] monitor and carrying a firearm.

Trial Court Opinion, 7/8/20, at 10-12.

A review of the record demonstrates that Detective Lucke testified at trial that, when analyzing the surveillance video recovered from the scene of the homicide to formulate his conclusions and opinions about the depictions in the surveillance video, he relied, in part, on Detective Sloane's report,[7] which indicated that the time-stamp on the surveillance video, at the time Detective Sloane retrieved the surveillance video from the minimart's recording device, was 5 minutes and 55 seconds behind the real-time as observed by the United States Naval Observatory's atomic clock. N.T., 2/5/20, at 103-106. Detective Lucke considered Detective Sloane's report "together with other evidence that [he] had access to, [including] reports, paperwork, [] as well as [geolocation] data from [Appellant's] ankle monitor that corroborated the time [off-set]." *Id.* at 106. Detective Lucke stated that, it is common practice in surveillance video recovery to note any time differences between the time-stamp on the surveillance video as compared to the real-time reported by the United States Naval Observatory's atomic clock,

_____

[7] Detective Sloane's findings regarding the 5 minute and 55 second time differential between the time-stamp on the surveillance video and the real-time, as set forth in his report, constituted hearsay under Pennsylvania Rule of Evidence 801. *See* Pa.R.E. 801 (defining hearsay as, a statement, including a written assertion, that "the declarant does not make while testifying at the current trial" and "a party offers in evidence to prove the truth of the matter asserted in the statement").

at the moment the surveillance video is recovered. *Id.* at 105. Detective Lucke regularly relies on video recovery reports, such as Detective Sloane's report, when analyzing recovered surveillance video to formulate his opinions and conclusions about the events depicted in surveillance videos. *Id.* at 102-103. In addition to reviewing Detective Sloane's report in the case *sub judice*, Detective Lucke stated that, he spoke with Detective Sloane about the surveillance video recovery procedure Detective Sloane utilized and about the contents of his report. *Id.* at 103, 132. Detective Lucke also stated that, he examined the data recovered from the video recording device, including the system log, in order to determine if the recording device's time settings had been altered. *Id.* at 133.

Based upon a review of the record, we discern no error of law or abuse of discretion in the admission of Detective Lucke's testimony regarding the 5 minute and 55 second time differential between the time stamp that appeared on the surveillance video and the real-time, as set forth in Detective Sloane's report. The record establishes that Detective Sloane's report, and the information contained therein, was the type of information that Detective Lucke regularly and reasonably relied on as an expert in video analysis and recovery when formulating his conclusions and expert opinions. Moreover, Detective Lucke verified the recovery procedure utilized and the trustworthiness of the reported information by speaking with Detective Sloane and by reviewing the video recording device's system log. Consequently, Appellant's issue is without merit.

Judgment affirmed. Motion to withdraw granted.

Judge Strassburger did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/15/2021*