J-S21024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1331 EDA 2023 |

Appeal from the PCRA Order Entered May 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0111361-2006

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:               **FILED NOVEMBER 5, 2024**

Appellant John Alexander appeals *pro se* from the order dismissing his
first Post Conviction Relief Act[1] (PCRA) petition. On appeal, Appellant raises
numerous claims of ineffective assistance of counsel. We affirm.

The PCRA court set forth the following factual and procedural history:

> The evidence at trial showed that on the evening of May 5, 2003,
> the victim, Reinaldo Zayas, was kidnapped when he met with
> Appellant to purchase a plasma television. When the victim did
> not return home, his girlfriend, Yomaxi Santos, tried calling him
> by cell phone. Santos testified that one of her calls was eventually
> answered and Zayas was heard screaming. After the call, Zayas's
> brother, Marcos Gutierrez, went to look for him. Zayas called 911.
> Police officers arrived at Zayas's home but Santos did not tell them
> about receiving a call from Zayas or hearing him screaming.
>
> When Gutierrez returned home, he received a call from the
> kidnappers, demanding that money be dropped off at 9th and

_____

[1] 42 Pa.C.S. §§ 9541-9546.

Glenwood. Gutierrez worked with police to deliver $4,000 to the requested location, but the ransom was never picked up.

The following day, May 6, 2003, Appellant called the police and reported that he was abducted and beaten. At Episcopal Hospital, Appellant told Officer Steven Johnson that Appellant was forced into a van, with Zayas, at gunpoint, and that Appellant was forced to call his girlfriend, Michelle Carter, in order to request $3,500 in ransom money. Appellant told Officer Johnson that the kidnappers took Appellant to an abandoned house, where he was duct taped, beaten, and burned. Appellant then told Officer Johnson that he passed out several times before awak[ing] around 22nd and Lehigh [Avenue]. While at the hospital, Appellant also gave a statement to Detective Ken Golczewski saying that when he woke up, he found a payphone near Broad and Lehigh and called Michelle Carter to pick him up.

Appellant then gave a statement to Homicide Detective Aaron Booker. He told Detective Booker that when the kidnappers let him go, they walked him to an alleyway at 22nd and Sedgley. Appellant told Detective Booker that while he told East Detectives that Michelle Carter picked him up at Broad and Lehigh, he walked to his aunt's house at 3500 Old York Road.

After his interview with Homicide, Appellant rode with Detective Greg Pinto to show him where [the kidnappers released him]. Appellant told Detective Pinto that he was released on railroad tracks and took Detective Pinto to 22nd and Sedgley. Appellant explained that he picked up a pay phone at 17th and Lehigh, which did not work, and so [he] went to 15th and Lehigh to find a working pay phone. After checking the 15th and Lehigh pay phone himself, Detective Pinto found that it was not working, and then took Appellant back to East Detectives.

Next, Appellant met with Detective Robert Fetters and agreed to help detectives locate Reinaldo Zayas. After driving with detectives for approximately 45 minutes and heading westbound on Cecil B. Moore Avenue, Appellant said, "[i]f you flood this area, you will probably find the van, if the police flood the area." The detectives and Appellant approached a van near 1800 Cecil B. Moore Avenue, and Appellant told them, "it looks like the van." Zayas's body was found inside the van.

Several weeks later, on June 12, 2003, Michelle Carter called police regarding a domestic disturbance and told them that Appellant killed someone two weeks before. Michelle Carter's

brother, Maurice Carter, gave an interview to Homicide and told them that Appellant admitted to Maurice Carter that Appellant set Zayas up. Maurice Carter later recanted [his statement].

At trial, Dr. Edwin [Lieberman] testified that he determined, to a reasonable degree of medical certainty, that Zayas's cause of death was multiple stab wounds to the buttock and thigh and that the manner of death was homicide. Dr. [Lieberman] testified from his observations made regarding photographs taken during the autopsy and the autopsy report that Dr. Ian Hood prepared. After a grand jury investigation, Appellant was arrested on September 20, 2005. On March 13, 2007, a jury sitting before the [trial court] found Appellant guilty of second-degree murder, robbery, kidnapping for ransom, unlawful restraint, and conspiracy.[2] On May 17, 2007, [the trial court] imposed a mandatory sentence of life [imprisonment] without parole and 5 to 10 years running concurrent on Appellant's conspiracy charge. Appellant filed a post-sentence motion on May 22, 2007. The [trial court] denied the post-sentence motion on October 2, 2007.

Appellant appealed and the Superior Court affirmed Appellant's judgments of sentence on February 5, 2009. [**See Commonwealth v. Alexander**, 2551 EDA 2007 (Pa. Super. filed Feb. 5, 2009) (unpublished mem.).] Appellant filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied on August 3, 2010. [**See Commonwealth v. Alexander**, 3 A.3d 669 (Pa. 2010). Appellant did not file a petition for a writ of *certiorari* with the Supreme Court of the United States.]

Appellant filed a *pro se* PCRA petition on May 9, 2011. He filed an amended PCRA petition on December 22, 2017[Fn2] and a supplemental petition on May 3, 2018, seeking reinstatement of his direct appeal and post-sentence motion rights. After the Commonwealth responded, the [PCRA court] issued a dismissal notice under [Pa.R.Crim.P.] 907, on October 17, 2018. PCRA counsel filed a response to the [PCRA court's] Rule 907 notice on March 3, 2020, raising the aforementioned ineffectiveness claims. The Commonwealth filed its motion to dismiss the supplemental claims on June 23, 2020. On September 21, 2020, Judge Minehart issued a second notice of intent to dismiss under Rule 907. On November 19, 2020, the [PCRA] court formally dismissed

_____

2 18 Pa.C.S. §§ 2502(b), 3701(a), 2901(a)(1), 2902(a), and 903(a), respectively.

Appellant's PCRA petition. However, on November 19, 2020, the [PCRA] court rescinded that order. [Subsequent] counsel entered an appearance shortly thereafter and filed the instant supplemental pleading. On September 28, 2021, Appellant filed a supplemental PCRA. On March 17, 2022, [the] Commonwealth filed a motion to dismiss [Appellant's] PCRA petition.

[Fn2] Between the filing of Appellant's *pro se* petition and his amended petition, several different counsel were appointed and withdrew, resulting in multiple continuances. This led to Appellant's amended petition not being filed for over six years.

PCRA Ct. Op., 10/23/23, at 1-4 (footnote omitted and formatting altered).

The PCRA court entered an order dismissing Appellant's PCRA petition on May 26, 2023.[3] Appellant filed a timely counseled notice of appeal on May 27, 2023. Although the PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, the PCRA court issued an opinion addressing Appellant's PCRA claims.

On June 24, 2023, Appellant's counsel, Teri B. Himebaugh, Esq., filed an application to withdraw, stating that Appellant wished to proceed *pro se*. *See* Application to Withdraw as Counsel, 6/24/23. This Court entered an order on June 30, 2023, remanding the matter to the PCRA court to conduct a

---

[3] The PCRA court's docket reflects that the PCRA court entered orders dismissing Appellant's PCRA petition on March 15, 2023, May 16, 2023, May 24, 2023, and May 26, 2023. Because the timeliness of the appeal was implicated, this Court directed the PCRA court to clarify the date on which the PCRA petition was dismissed and to correct the PCRA court docket. The PCRA court responded on July 31, 2023, indicating that the PCRA petition was dismissed on May 26, 2023.

*Grazier*[4] hearing. On November 8, 2023, the PCRA court held a *Grazier* hearing and found that Appellant knowingly, intelligently, and voluntarily waived his right to counsel and granted Attorney Himebaugh's motion to withdraw as counsel. *See* PCRA Ct. Order, 11/9/23.

Appellant raises the following issues for our review:

1. Did defense counsel[5] render ineffective assistance at trial in failing to lodge a proper objection, and failing to take appeal issue with, the prosecution's presentation of testimony and argument about prior statements by Michelle Carter, including an accusation that [Appellant] had "killed someone" two weeks before, and were all previous PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

2. Did defense counsel render ineffective assistance at trial in failing to lodge any objection, and failing to take any appeal issue with, the prosecution's presentation of testimony and argument repeatedly referencing [Appellant's] pre-arrest silence and refusals to cooperate with police investigators, and were all previous PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

3. Did defense counsel render ineffective assistance at trial in failing to lodge a proper objection, and failing to take appeal issue with, the prosecution's presentation of testimony and argument referencing other, unrelated criminal acts attributed to [Appellant], without any cautionary instruction or guide or limit jury consideration of same, and were all previous PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

_____

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[5] The record reflects that J. Michael Farrell, Esq., represented Appellant at trial and on direct appeal.

- 5 -

4. Did defense counsel render ineffective assistance at trial in failing to lodge any objection, and failing to take any appeal issue with, the trial court's instruction, during its jury charge, directing that the jury "must give weight" to testimony about "statements made" by that witness, and were all prior PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

5. Did defense counsel render ineffective assistance at trial in failing to lodge any objection, and failing to take any appeal issue with, the trial court's omission, from its jury charge, of pertinent and applicable instructions, and were all prior PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

6. Did defense counsel render ineffective assistance at trial in failing to subpoena and call Police Officer Craig Van Sciver to testify as a defense witness, and were all previous PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness as a PCRA claim?

7. Did defense counsel render ineffective assistance at trial in failing to lodge any objection, and failing to take any appeal issue with, the prosecution's presentation of hearsay testimony (by an assistant medical examiner) as to opinions and conclusions contained within: (A) the victim's autopsy and toxicology reports, and (B) [Appellant's] emergency room medical records, and were all previous PCRA counsel ineffective in failing to properly present, develop and support this claim?

8. Did defense counsel render ineffective assistance at trial in failing to lodge a proper objection, and failing to take appeal issue with, the prosecution's presentation of testimony and argument utilizing previous statements by witnesses as substantive evidence, and were all prior PCRA counsel ineffective in failing to investigate, identify or present this instance of defense counsel's ineffectiveness?

9. Did defense counsel render ineffective assistance at trial in erroneously and unreasonably advising [Appellant] to forego or waive his constitutional right to testify on his own behalf, and were all prior PCRA counsel ineffective in failing to properly present, argue, and support this claim?

10. Did all previous PCRA counsel render ineffective assistance during each of their respective representations: (A) in failing to investigate, identify and present claims of ineffective assistance by defense (trial/appellate) counsel; and (B) in failing to properly develop supporting arguments and citations to applicable law, and n failing to adequately present or reference pertinent facts, as to those claims that were presented?

Appellant's Brief at 5-7.[6]

Because all ten of Appellant's issues raise claims of ineffective assistance of counsel, we begin with our well-settled standard of review:

In reviewing the denial of a PCRA petition, our standard of review is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the

_____

[6] Preliminarily, we note that Appellant has not raised all ten of these issues in his most recent amended PCRA petition nor in his response to the PCRA court's Rule 907 notice of intent to dismiss Appellant's PCRA petition without a hearing. Typically, any claims not first raised before the PCRA court are waived on appeal. **See** Pa.R.A.P. 302(a). In all ten of his issues, however, Appellant raises a layered claim of ineffective assistance on the part of his PCRA counsel. Our Supreme Court has adopted a rule permitting PCRA petitioners to "raise claims of ineffective [assistance of] PCRA counsel at the first opportunity, even if on appeal." **Commonwealth v. Bradley**, 261 A.3d 381, 405 (Pa. 2021). This Court has held that **Bradley** permits us to review an allegation of PCRA counsel's ineffectiveness, even if it is raised for the first time on appeal, rather than in a response to a Rule 907 notice. **See Commonwealth v. Taylor**, 1654 MDA 2022, 2023 WL 5202414 at *3 (Pa. Super. filed Aug. 14, 2023) (unpublished mem.); **see also** Pa.R.A.P. 126(b) (stating that unpublished memoranda filed after May 1, 2019 may be cited for persuasive value). Accordingly, we decline to find waiver and shall review Appellant's issues on their merits.

evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\* \* \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.  Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered); *see also Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014) (stating that "[c]ounsel is presumed effective, and the petitioner bears the burden of proving otherwise"). Additionally, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa. Super. 2021) (citation omitted).

"Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Commonwealth v. Parrish*, 273 A.3d 989, 1004 n.11 (Pa. 2022) (citation omitted).

Specifically, our Supreme Court has explained:

- 8 -

> To be eligible for relief on [layered claims of ineffective assistance of counsel, a petitioner] must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) [subsequent] counsel was ineffective for failing to raise trial counsel's ineffectiveness. As to each relevant layer of representation, [a petitioner] must meet all three prongs of the **Pierce**[7] test for ineffectiveness. A failure to satisfy any of the three prongs of the **Pierce** test requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of [subsequent] counsel.
>
> Thus, if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of [subsequent] counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the **Pierce** test [*i.e.*, the reasonable basis and prejudice prongs] as applied to [subsequent] counsel.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (citations omitted and formatting altered).

### Michelle Carter's Testimony

In his first issue, Appellant contends that Attorney Farrell provided ineffective assistance because he failed to object following testimony regarding Michelle Carter's accusation that Appellant had killed someone two weeks earlier. Appellant's Brief at 21. Ms. Carter's accusation was made in the context of the police responding to a dispatch of a person screaming at 3209 Rorer Street on June 12, 2003. N.T. Trial, 3/5/07, at 39-40. In his brief, Appellant concedes that an objection was offered at trial; however, Appellant argues that Attorney Farrell was ineffective for failing to raise that

_____

[7] *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987); *see also Sandusky*, 203 A.3d at 1043 (same).

issue on direct appeal. Appellant's Brief at 21. Because the record reflects that objections in fact were raised to the evidence in question, our review shall be limited to whether Attorney Farrell rendered ineffective assistance for failing to raise this issue on direct appeal. *See* N.T. Trial, 3/2/07, at 143; N.T. Trial, 3/5/07, at 43-45, 53-55.

To that end, Appellant contends that Ms. Carter's statement was inadmissible hearsay evidence. Appellant's Brief at 23. Specifically, Appellant claims that Ms. Carter lacked the personal knowledge as to whether Appellant had actually killed someone two weeks prior to Ms. Carter's June 12, 2003 accusation. *Id.* at 24. Appellant further argues that Ms. Carter's statement "is nothing more than a mere unsupported accusation, based neither on an admission, nor on personal knowledge. Use of such an accusation, based wholly on speculation and conjecture, denied [Appellant] a fundamentally fair trial, violating due process guarantees." *Id.* at 25-26 (citations omitted and some formatting altered).

The Pennsylvania Rules of Evidence recognize that an opposing party's statement is an exception to the rule against hearsay. Pa.R.E. 803(25)(A). Our Supreme Court has explained that this exception to the rule against hearsay is well-settled:

> [I]t is fair in an adversary system that a party's prior statements be used against him if they are inconsistent with his position at trial. In addition, a party can hardly complain of his inability to cross-examine himself. A party can put himself on the stand and explain or contradict his former statements.

Thus, in criminal cases, this Court has consistently held that a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule.

***Commonwealth v. Edwards***, 903 A.2d 1139, 1157-58 (Pa. 2006) (citations omitted and formatting altered).

In its Rule 1925(a) opinion prior to direct appeal,[8] the trial court reached the following conclusion:

> No abuse of discretion occurred here because it was clear to [the trial court] that Ms. Carter's knowledge that [Appellant] had killed someone emanated from [Appellant] and thus constituted an admission. It is beyond cavil that admissions made by a criminal defendant are admissible evidence. ***Commonwealth v. Ferguson***, 516 A.2d 1200 (Pa. Super. 1986); ***Commonwealth v. Darden***, 457 A.22d 549 (Pa. Super. 1983). Accordingly, this claim should be rejected as meritless.

Trial Ct. Op., 3/4/08, at 13-14 (some formatting altered).

Based on our review of the record, we find that Appellant's underlying hearsay claims are without arguable merit. Therefore, Attorney Farrell was not ineffective for failing to raise these claims on direct appeal. ***See Davis***, 262 A.3d at 596.

---

[8] The record reflects that while this issue was preserved at trial and included in Appellant's Rule 1925(b) statement for his direct appeal, the issue was ultimately neither briefed nor argued before this Court. ***See*** Appellant's Rule 1925(b) Statement, 10/24/07, at 2; ***Alexander***, 2551 EDA 2007.

In addition to his hearsay argument, Appellant claims that he and Ms. Carter had a common-law marriage[9] and that the spousal privilege should have precluded the admission of Ms. Carter's testimony. Appellant's Brief at 26. Therefore, Appellant contends that Attorney Farrell was ineffective because he never objected to Ms. Carter's testimony based on spousal privilege. *Id.* at 27.

It is well-settled that in a criminal proceeding, a spouse shall not be competent or permitted to testify against his or her spouse with regard to confidential communications made to one by the other, unless this privilege is waived at trial. 42 Pa.C.S. § 5914. Our Supreme Court has held that the spousal privilege extends to common-law marriages. *Commonwealth v. Wilson*, 672 A.2d 293, 301 (Pa. 1996). The *Wilson* Court further explained:

> To create a common-law marriage, there must be an exchange of words in the present tense spoken with the specific purpose that the legal relationship of husband and wife be thereby created. In the absence of formal words, a rebuttable presumption of marriage may arise based upon certain circumstantial evidence, *i.e.*, constant cohabitation and broad and general reputation of marriage. Cohabitation and reputation are merely circumstances from which the existence of a contract of marriage can be inferred, and not sufficient *per se* to prove a common-law marriage. If the trial court finds a common-law marriage exists, confidential communications between spouses are subject to the spousal privilege.

> *        *        *

---

[9] The General Assembly abolished common-law marriages in Pennsylvania effective January 1, 2005. 23 Pa.C.S. § 1103. Any common-law marriages that were "otherwise lawful and contracted on or before January 1, 2005," remained valid. *Id.*

[T]he burden of proof rests on the party claiming the existence of a common-law marriage.

*Id.* (citations omitted and some formatting altered).

Appellant claims that he and Ms. Carter "were common law spouses, as evidenced by their lengthy, constant cohabitation, their community reputation as a married couple, and their producing a child together." Appellant's Brief at 26 (citing *Wilson*, 672 A.2d at 301). Appellant further states that he would be able to meet his burden of establishing that a common-law marriage existed between himself and Ms. Carter. *Id.*, unnumbered footnote.

The record belies Appellant's claim. Indeed, during Ms. Carter's testimony at trial, she testified that she was "staying back and forth" at "a couple [of] houses." N.T. Trial, 3/2/07, at 88. When she spoke to homicide detectives on May 7, 2003, Ms. Carter stated that she was Appellant's girlfriend. *Id.* at 133. Further, at the time of trial, Ms. Carter testified that she was no longer Appellant's girlfriend and that she could not recall whether she was living with Appellant on May 7, 2003. *Id.* at 133-34. At no point during her trial testimony did Ms. Carter describe Appellant as her husband.

Based on our review of the record, we find that Appellant cannot establish that he and Ms. Carter established a legal relationship as husband and wife, nor can he establish circumstantial evidence of constant cohabitation and a broad general reputation of marriage within the community. *See Wilson*, 672 A.2d at 301. Accordingly, Appellant's claims regarding Ms.

Carter's testimony are without arguable merit, and Appellant is not entitled to relief. **See Davis**, 262 A.3d at 596; **Sandusky**, 203 A.3d at 1043-44.

### Appellant's Pre-Arrest Silence

In his second issue, Appellant argues that Attorney Farrell was ineffective for failing to object to the Commonwealth's references to Appellant's pre-arrest silence. Appellant's Brief at 30. Specifically, Appellant identifies five instances where he alleges that the Commonwealth improperly referenced or elicited testimony referencing his pre-arrest silence: the Commonwealth's opening statement to the jury; testimony of Philadelphia Police Officer Dayton Bennett, testimony of Detective Carl Watkins; testimony of Denise Alexander; and the Commonwealth's closing argument. **Id.** (citing N.T. Trial, 3/2/07, at 56-57); **id.** at 31 (citing N.T. Trial, 3/5/07, at 41-42, 52-53, 60-62; N.T. Trial, 3/7/07, at 126, 129-34).

The use of pre-arrest silence as substantive evidence of a criminal defendant's guilt is governed by our Supreme Court's decision in **Commonwealth v. Molina**, 104 A.3d 430 (Pa. 2014) (plurality). The **Molina** Court specifically held that the use of properly admitted evidence of a criminal defendant's pre-arrest silence to infer guilt violates Article I, Section 9 of the Pennsylvania Constitution. **Molina**, 104 A.3d at 453. The same day that it announced its decision in **Molina**, our Supreme Court also announced its decision in **Commonwealth v. Adams**, 104 A.3d 511 (Pa. 2014) (plurality). The **Adams** Court held as follows:

> [Our Supreme] Court has previously concluded that mere reference to a defendant's silence does not necessarily impinge constitutional rights when guilt is not implied. While we have interpreted the constitutional right against self-incrimination generally to prohibit prosecutors from referencing a defendant's silence as substantive evidence of guilt, this Court has also concluded that the right against self-incrimination is not burdened when the reference to silence is circumspect and does not create an inference of an admission of guilt. . . . Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt.

*Adams*, 104 A.3d at 517 (citation omitted and formatting altered).

<u>Commonwealth's Opening Statement</u>

Appellant first alleges that the Commonwealth improperly alluded to his pre-arrest silence. Appellant's Brief at 30. In his brief, Appellant directs this Court to pages 56-57 of the March 2, 2007 notes of testimony from the trial. *See id.* At no point in the cited testimony is Appellant's pre-arrest silence referenced.

"It is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, **with references to the record** and with citations to legal authorities." *Commonwealth v. Westlake*, 295 A.3d 1281, 1286 (Pa. Super. 2023) (citations omitted, some formatting altered, and emphasis added). "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa.

Super. 2014) (citations omitted); *see also Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017) ("Although this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit"). An appellant's failure to adequately develop an argument results in waiver of the claim. *Commonwealth v. Romeo*, 153 A.3d 1084, 1090 (Pa. Super. 2017); *see also* Pa.R.A.P. 2119(c). Accordingly, Appellant's claim with regard to any reference to his pre-arrest silence in the Commonwealth's opening statement to the jury is waived. *See Romeo*, 153 A.3d at 1090.

<u>Officer Dayton Bennett's Testimony</u>

Appellant next contends that the Commonwealth improperly elicited testimony regarding his pre-arrest silence from Philadelphia Police Officer Dayton Bennett. Appellant's Brief at 31. As part of his testimony, Officer Bennett stated that, when he responded to a dispatch for a person screaming, Ms. Carter told him that Appellant had killed someone a week or two ago. *See* N.T. Trial, 3/5/07, at 39-41. Officer Bennett further testified that upon hearing Ms. Carter say this, Appellant "retreated to the kitchen area and after grabbing the baby out of her hand grabbed a kitchen knife, a large kitchen knife, and held the baby in his left hand, the knife in his right hand[.]" *Id.* at 41-42. The remaining testimony cited by Appellant addresses how Appellant was holding the knife in the kitchen, legal argument by Appellant's counsel with regard to the use of inconsistent statements, and Appellant's actions after Ms. Carter told the police that he had killed someone a week or two ago. *Id.*

at 52-53, 60-62. At no point did the Commonwealth or Officer Bennett reference Appellant's pre-arrest silence for the purpose of drawing a negative inference. Accordingly, Appellant's claim is without arguable merit and no relief is due. *See Adams*, 104 A.3d at 517; *Sandusky*, 203 A.3d at 1043.

### Detective Carl Watkins' Testimony

Next, Appellant alleges that the Commonwealth, through the testimony of Detective Carl Watkins, improperly elicited testimony regarding Appellant's pre-arrest silence. Appellant's Brief at 31. First, the record reflects that Detective Watkins stated that the police had attempted to re-interview Appellant with regard to the underlying homicide, and that no such re-interview occurred. N.T. Trial, 3/7/07, at 126. In the remaining testimony cited by Appellant, Detective Watkins described his unsuccessful efforts to obtain an interview with Appellant. *Id.* at 129-34. Detective Watkins also stated that because Appellant did not come in for another interview, Detective Watkins ordered more of Appellant's phone records. *Id.* at 133.

Based on our review of the record, there is no basis to conclude that Detective Watkins testified about any sort of negative inference with regard to Appellant's pre-arrest silence. Accordingly, because Appellant has failed to establish that his claim has arguable merit, he is not entitled to relief. *See Adams*, 104 A.3d at 517; *Sandusky*, 203 A.3d at 1043.

### Denise Alexander's Testimony

Appellant alleges that during cross-examination of his mother, Denise Alexander, the Commonwealth attempted to draw negative inferences about

- 17 -

Appellant's pre-arrest silence. Appellant's Brief at 31. In the testimony cited by Appellant, Ms. Alexander testified that homicide detectives told her that they wished to interview Appellant, and Appellant did not tell her that he did not want to go. *See* N.T. Trial, 3/8/07, at 145.

However, on this record, there is no basis to conclude that this testimony represents an attempt by the Commonwealth to draw a negative inference upon Appellant's exercising of his pre-arrest right to remain silent. Accordingly, Appellant is not entitled to relief, as this claim is of no arguable merit. *See Adams*, 104 A.3d at 517; *Sandusky*, 203 A.3d at 1043.

<u>Commonwealth's Closing Argument</u>

Finally, Appellant alleges that the Commonwealth drew a negative inference to Appellant's pre-arrest silence during its closing argument. Appellant's Brief at 31. Specifically, Appellant cites to the following excerpt from the Commonwealth's closing argument:

> [Appellant] went through the most horrible experience of his life, his friend died. He doesn't want to go again. Come on. Doesn't want to come. Watkins, a liar? No. Mom said it, I told him to go. He wouldn't go. Wouldn't tell me why.
>
> They did talk about this fear. Fear of what? There is no evidence of somebody threatening and say you better not go to the police. No. [Detective] Rocks is looking for them. Mom admits they were all over the house. They were looking and he was alive. I didn't know where he was. Counsel says, well, he was at Home Depot because he was working. Everything I heard is he's an electronics dealer. I was waiting for a Best Buy I.D. car or Circuit City or whatever because he does that. I heard nothing about construction.
>
> But he is at Home Depot. What does he do? Police are looking for him. Mom verifies she knew. He knows, although she said I

- 18 -

didn't see him, but she's a mom, that's her baby. I don't fault her for that. But he knew, knew to the point when two cops are asking you questions and checking your arm, he pulls off and runs. What stops him? The Home Depot doors. Bang. Because he was moving too fast, that thing, and there you go. What does he say? You got me. You got me.

N.T. Trial, 3/9/07, at 111-12.

Based on our review of this record, there is no basis to conclude that the Commonwealth made any negative inference to Appellant's choosing to exercise his right to remain silent pre-arrest. Accordingly, Appellant's claim has no arguable merit and he is not entitled to relief. **See Adams**, 104 A.3d at 517; **Sandusky**, 203 A.3d at 1043.

### Prior Bad Acts

In his next issue, Appellant alleges that Attorney Farrell was ineffective for failing to object to evidence of Appellant's prior bad acts. Appellant's Brief at 36. Specifically, Appellant contends that the Commonwealth "presented extensive testimony establishing that [Appellant] engaged in unrelated criminal acts, *i.e.*, that [Appellant] 'killed' an unspecified 'someone' and threatened police with a knife." **Id.** Appellant further argues that Attorney Farrell was ineffective for failing to request a jury instruction with regard to the prior bad acts evidence. **Id.** at 38.

Pennsylvania Rule of Evidence 404(b) generally prohibits "[e]vidence of a crime, wrong, or other act" when such evidence is offered to show "that on a particular occasion the person acted in accordance with the character" shown by that crime, wrong, or other act. Pa.R.E. 401(b)(1). There are,

however, exceptions to this general rule and "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Courts have also recognized another exception—*res gestae*—to give essential background information to the crimes on trial. **See Commonwealth v. Reid**, 99 A.3d 427, 451 (Pa. 2014). However, even if evidence falls within one of the exceptions, the probative value of the evidence must outweigh its potential for unfair prejudice. Pa.R.E. 404(b)(2). Unfair prejudice is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, cmt. When weighing probative value and unfair prejudice, we "may consider whether and how much such potential for unfair prejudice can be reduced by cautionary instructions." Pa.R.E. 404, cmt.

All evidence against a defendant in a criminal case will be prejudicial. **Commonwealth v. Peer**, 684 A.2d 1077, 1083 (Pa. Super. 1996). Our determination in this context, however, must be whether evidence is unfairly prejudicial. **Id.**; **see also** Pa.R.E. 404(b)(2). While the trial court must exclude relevant but unfairly prejudicial evidence, we are "not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged." **Commonwealth v. Broaster**, 863 A.2d 588, 592 (Pa. Super. 2004) (quotation omitted). In

order for it to be excluded, relevant evidence must be "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." ***Id.*** (quotation omitted).

Based on our review, we find that Appellant's claim lacks arguable merit. On this record, the testimony regarding Ms. Carter's statements to the police that Appellant had killed someone a week or two prior to the police responding to Ms. Carter's residence on June 12, 2003, is part of the history and natural development of the events and offenses with which Appellant was charged in the instant case. ***Broaster***, 863 A.2d at 592. Likewise, Appellant's response to Ms. Carter's allegations—pulling a knife and threatening police officers— was likewise part of the history of the events and offenses with which Appellant was charged. ***See id.*** Accordingly, we find that Appellant's third issue lacks arguable merit, and he is not entitled to relief. ***See Sandusky***, 203 A.3d at 1043.

**Failure to Object to Closing Jury Instruction**

Appellant's next two issues relate to Attorney Farrell's failure to object to the trial court's jury instructions at the close of trial. First, Appellant contends that Attorney Farrell was ineffective for failing to raise an objection to the trial court's instruction to the jury to "'give weight' to testimony about previous statements made by witnesses." Appellant's Brief at 42 (citations omitted). Appellant argues that this "instruction invaded the province of the jury and relieved the prosecution of its burden of proof—although other instructions also directed jury consideration of previous statements." ***Id.***

When reviewing a trial court's jury instructions, the following principles govern:

> [O]ur scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.

*Commonwealth v. Barker*, 963 A.2d 495, 507 (Pa. Super. 2008) (citation omitted).

> Moreover,

> we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Id.* (citation omitted).

Our Supreme Court has stated that "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Simpson*, 66 A.3d 253, 274 n.24 (Pa. 2013) (citation omitted and formatting altered).

During its charge, the trial court gave the following general jury instruction regarding the use of prior statements:

I will give you some factors that you should consider when judging credibility and deciding whether or not you believe the testimony presented by the witnesses here in court. Was the witness able to see, hear or know about the things which he or she testified to? Some witnesses testified to statements made and you must give weight to that testimony of that witness. Did the witness see that or did the witness hear that? How well could the witness remember and describe the things about which he or she testified? Was the ability of the witness to see, hear, know, remember or describe those things affected by youth, old age or any physical, mental or intellectual deficiency? Did the witness testify in a convincing manner? How did the witness look while he or she was testifying, act, speak, while he or she is testifying? Was the witness' testimony uncertain, confused, self-contradictory or evasive? Did the witness have any interest in the outcome of the case, bias, prejudice or other motive that might affect the witness' testimony? How well does the testimony of the witness square with the other evidence in the case including the testimony of other witnesses? Was it contradicted or supported by the testimony in evidence? Does the testimony make sense?

N.T. Trial, 3/9/07, at 129-30. The trial court further instructed the jury as follows:

You have heard evidence that witnesses may have made statements on an earlier occasion that may have been inconsistent with his or her present testimony -- may have made statements on an earlier occasion that may have been consistent with his or her trial testimony or may have been testified on prior occasions that may have been inconsistent with his or her present testimony. Or may have testified on prior occasions that may be consistent with his or her trial testimony. There are different rules concerning how you're to consider those prior inconsistent or consistent statements.

First, to the extent that you find a witness' trial testimony inconsistent with an earlier part of the testimony at an earlier proceeding or with a prior verbatim statement that was adopted by the witness at the time he or she gave it, you may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier prior testimony or statement. You may also consider this evidence to help you judge the credibility of and weight of the testimony given by the witness at the trial.

- 23 -

You may not regard evidence of an earlier inconsistent statement that was not prior sworn testimony or prior verbatim statement adopted by the witness at the time he or she gave it as proof of the truth of anything said in that statement. You may consider this evidence of a prior inconsistent statement for one purpose only: To help you judge the credibility and weight of the testimony given by the witness at this trial.

Next, to the extent that you find that the witness' trial testimony was consistent with prior sworn testimony at a prior proceeding with a prior verbatim statement, you may only consider this for one purpose only; that is, to help you judge the credibility and weight of the testimony given by the witness in this trial.

*Id.* at 133-135; *cf.* Pa. SSJI (Crim) 4.08A(2) ("You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement").

Following our review, we find that the trial court's jury instructions clearly, adequately, and accurately presented the pertinent points of law for the jury's consideration. *See Barker*, 963 A.2d at 507. Under these circumstances, we conclude that Appellant failed to establish any arguable merit to his claim that Attorney Farrell should have raised this issue on direct appeal. *See Sandusky*, 203 A.3d at 1043. Accordingly, Appellant is not entitled to relief.

**Failure to Object to Omitted Instructions**

In his next issue, Appellant contends that Attorney Farrell was ineffective for failing to object to the trial court's jury instructions because the trial court "omitted pertinent instructions." Appellant's Brief at 47.

Specifically, Appellant argues that the trial court failed to give instructions regarding the Commonwealth's grant of immunity to Maurice Carter, the testimony of Michelle Carter as an accomplice, a guilt by association instruction relating to Ms. Carter's convictions for perjury, Appellant's right to remain silent, and a limiting instruction regarding evidence of Appellant's prior bad acts. *Id.* at 49-52. We will address each claim separately.

Immunity Instruction

Appellant also argues that although the trial court granted defense counsel's request to instruct the jury about the Commonwealth's grant of immunity to Maurice Carter, the trial court did not provide that jury instruction, and Attorney Farrell failed to object to its omission. *Id.* at 48-49 (citing N.T. Trial, 3/6/07, at 84-85).

While the trial court did not specifically address Mr. Carter's immunity in its closing instructions to the jury, the record reflects that the jury was aware of the circumstances surrounding Mr. Carter's testimony. Indeed, in the presence of the jury, Mr. Carter admitted that he was testifying at trial because the Commonwealth granted him immunity.[10] As stated above, the trial court provided the jury with general instructions as to the factors it should consider when determining whether the witnesses were credible. *See* N.T. Trial, 3/9/07, at 129-30.

---

[10] In the context of direct examination, the Commonwealth described immunity to Mr. Carter as that he "cannot be charged with any crime that [he] may say [he] did or didn't do. The only thing [he] can't be precluded from is if [he] commit[s] perjury." N.T. Trial, 3/6/07, at 9.

- 25 -

Based upon our review of the record, we find that the trial court did not abuse its discretion when it did not provide an immunity instruction to the jury during its closing instructions. *See Barker*, 963 A.2d at 507. Accordingly, Appellant has not established that his claim of ineffective assistance of counsel has arguable merit, and he is not entitled to relief. *See Sandusky*, 203 A.3d at 1043.

Accomplice Testimony Instruction

Appellant next contends that Attorney Farrell was ineffective for failing to request an accomplice testimony instruction with regard to Michelle Carter's testimony. Appellant's Brief at 50. Appellant argues that the Commonwealth "characterized Michelle Carter as an accomplice, and charged her as [Appellant's] co-defendant." *Id.* In support of this claim, Appellant cites the Commonwealth's remark during trial that Ms. Carter knew the underlying crime was happening as it was happening. *Id.* (citing N.T. Trial, 3/9/07, at 3, 94-97).

The Commonwealth responded by arguing that Ms. Carter was not charged as a co-defendant in this case. Commonwealth's Brief at 25.

Appellant has not cited to any evidence of record establishing that Ms. Carter was charged as a co-defendant in this case. Moreover, our review of the Commonwealth's closing argument to the jury does not reveal that Ms.

Carter was charged as an accomplice in this case.[11]   Accordingly, Appellant was not entitled to an instruction about an accomplice's testimony; therefore, his claim is without arguable merit.  **See Sandusky**, 203 A.3d at 1043.

Guilt by Association Instruction

Next, Appellant argues that he was entitled to a guilt by association jury instruction, stating that the Commonwealth "relied on [Ms. Carter's guilty pleas for three counts of perjury] in arguing for guilty verdicts."  Appellant's Brief at 51 (citation omitted).

It is well-settled that in cases in which a co-defendant has entered a guilty plea, and evidence of that guilty plea is introduced at the trial of the remaining co-defendant(s), the remaining co-defendant(s) are entitled to a cautionary jury instruction.  **Commonwealth v. Geho**, 302 A.2d 463, 465-66 (Pa. Super. 1973) (*en banc*).  "It is incumbent, therefore, upon the trial judge to give adequate and clear cautionary instructions to the jury to avoid 'guilt by association' as to the defendant being tried."  **Id.** at 466 (citation omitted).

As discussed above, Ms. Carter was not a co-defendant in the instant case.  Accordingly, Appellant was not entitled to a guilt by association jury instruction, and his claim lacks arguable merit.  **See id.** at 465-66; **Sandusky**, 203 A.3d at 1043.

---

[11] During trial, Ms. Carter stated that she had entered guilty pleas for three counts of perjury.  N.T. Trial, 3/2/07, at 85.  Ms. Carter's perjury charges arose from her grand jury testimony in the instant case.  **Id.** at 145-46; 208-10; **see also Commonwealth v. Carter**, CP-51-CR-1205401-2005.

### Right to Remain Silent Instruction

Appellant next contends that he was entitled to a no-adverse inference instruction regarding his pre-arrest silence. Appellant's Brief at 52. While he concedes that the trial court provided a no-adverse influence instruction with regard to his decision to not testify at trial, Appellant argues that because the Commonwealth "presented extensive testimonial evidence at [Appellant's] silence and cessation of communications with police, and about [Appellant's] silence when Michelle Carter stated to arresting officers that he killed someone two weeks before," he was entitled to an instruction on a defendant's right to remain silent generally. *Id.*

As we have stated above, the mere reference to the fact that a defendant has chosen to remain silent does not infringe upon his constitutional rights to do so. *See Adams*, 104 A.3d at 517. For the reasons that we discuss above, Appellant was not entitled to a jury instruction regarding his right to remain silent; therefore, his claim lacks arguable merit. *See Sandusky*, 103 A.3d at 1043.

### Prior Bad Acts Instruction

Finally, Appellant argues that the Commonwealth "presented extensive testimonial evidence about other crimes attributed to [Appellant]." The trial court jury charge had no instruction whatsoever to caution the jury in its consideration of this kind of evidence." Appellant's Brief at 53. Appellant contends that he was prejudiced because had Attorney Farrell requested a jury instruction on the prior bad acts evidence, "the jury would have

attempted to follow such instructions in their deliberations. Conversely, the uninstructed jury was far more likely to undertake improper consideration of the evidence[.]" *Id.* at 54.

"[W]hen evidence of a defendant's prior conduct or bad acts is admitted, the defendant is entitled upon request to a jury instruction explaining the limited purpose of such evidence." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 305 (Pa. 2011) (citation omitted). This Court has explained that "counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute *per se* ineffectiveness; rather, in order to obtain relief under such a claim, a defendant must still satisfy each of the prongs of the test for ineffective assistance of counsel." ***Commonwealth v. Johnson***, 179 A.3d 1105, 1119 (Pa. Super. 2018) (citation omitted and formatting altered).

As we stated above, the evidence at issue addresses the natural history and development of the case and the charges against Appellant. ***See Broaster***, 863 A.2d at 592. In the context of an ineffective assistance of counsel proceeding, prejudice is defined as but for counsel's failure to request a jury instruction regarding evidence of Appellant's prior bad acts, "there is a reasonable probability that the outcome of the proceedings would have been different." ***Sandusky***, 203 A.3d at 1044. Appellant does not allege that the outcome of his trial would have been different but for Attorney Farrell's failure to request a jury instruction regarding prior bad acts evidence; accordingly,

Appellant has not established the prejudice prong of ineffective assistance of counsel, and he is not entitled to relief. ***See id.***

**Failure to Call a Witness**

Appellant next alleges that Attorney Farrell was ineffective for failing to call Philadelphia Police Officer Craig Van Sciver as a defense witness. Appellant's Brief at 55. Appellant argues that Officer Van Sciver would have been able to "rebut prosecution evidence [and] otherwise corroborate or confirm the presence of visible injuries and burn marks on [Appellant's] arm on May 6, 2003, when police first encountered him." ***Id.***

In response, the Commonwealth argues that Attorney Farrell referenced Officer Van Sciver's observations during his cross-examination of Officer Van Sciver's partner, Officer Steven Johnson. Commonwealth's Brief at 27. Therefore, the Commonwealth concludes that "because any potentially helpful information was elicited on cross-examination, [Appellant] cannot prove that he was prejudiced by the absence of Officer Van Sciver." ***Id.***

This Court has explained:

> To prove arguable merit based on trial counsel's failure to call a witness, a PCRA petitioner must show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice.

***Commonwealth v. Robinson***, 278 A.3d 336, 343 (Pa. Super. 2022) (citation and internal quotation marks omitted). "In this context, prejudice means that the uncalled witnesses' testimony would have been beneficial under the

circumstances of the case." *Id.* (citation and internal quotation marks omitted).

Additionally, a PCRA petitioner must demonstrate that "trial counsel had no reasonable basis for his or her chosen trial strategy" as the "alternative strategy offered a potential for success substantially greater than the course actually pursued." *Id.* at 345. Finally, with respect to prejudice, the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In the instant case, the record reflects that Officer Johnson testified that Appellant alleged that he had been duct-taped and burned with cigarettes. *See* N.T., 3/6/07, at 112. Officer Johnson stated that he did not see any marks, bruises, or burns on his skin. *Id.*; *see also id.* at 116-18. On cross-examination, Officer Johnson stated that the police report indicated that Officer Van Sciver noted the presence of "visible marks." *Id.* at 121.

As summarized by a previous panel of this Court, Appellant initially told the police that he had been kidnapped and robbed and was only released when Ms. Carter paid a ransom. *See Alexander*, 2551 EDA 2007 at *2. This Court also noted that Appellant "gave the police inconsistent stories about where he had been picked up." *Id.* This Court summarized Appellant's inconsistent accounts to the police as follows:

> [Appellant] claimed he had passed out from a beating and when he regained consciousness in the vicinity of 22nd Street and Lehigh Avenue, the kidnappers were gone. He also said he was released

by the kidnappers at a railroad track near 22nd and Sedgley Streets and wandered around several blocks until he found a working pay phone. He called home and was picked up by his girlfriend and her brother, Maurice Carter, at Broad Street and Lehigh Avenue. Then he went home to sleep before reporting the incident. Finally, he told the police that he had been released at gunpoint in an alley and walked to his aunt's house in the 3500 block of Old York Road.

*Id.* at *2 n.2.

Moreover, as noted above, the Commonwealth presented evidence at trial that Ms. Carter indicated to the police that Appellant had killed someone two weeks prior. *See* N.T. Trial, 3/5/07, at 39-41. Further, the Commonwealth presented evidence that Appellant told Mr. Carter that he "set up the guy who got killed. [Appellant] had some guys run up on him and [Appellant] was going on with the ride like [Appellant] was getting robbed, too. [Appellant] said, We didn't get no money out of it." N.T. Trial, 3/6/07, at 36. Appellant further told Mr. Carter that if the police were to find out, Appellant would "take the rap." *Id.* at 36-37.[12]

Based on our review of the record, we find that Appellant was not prejudiced by Attorney Farrell's failure to call Officer Van Sciver as a witness. Therefore, no relief is due. *See Robinson*, 278 A.3d at 343.

**Failure to Raise Confrontation Clause Objection**

In his seventh issue, Appellant contends that Attorney Farrell was ineffective for failing to object to testimony from Dr. Edwin Lieberman on

---

[12] Mr. Carter recanted his statements to the police during trial. N.T. Trial, 3/6/07, at 46-47.

Confrontation Clause grounds. Appellant's Brief at 59. Specifically, Appellant argues that Dr. Lieberman testified about the contents of an autopsy report authored by Dr. Ian Hood and hospital records prepared by Dr. Jeffrey Geller. *Id.* Further, Appellant states that the evolution of Confrontation Clause jurisprudence from both the Supreme Court of the United States and the courts of this Commonwealth "was sufficiently developed to support an objection to exclude Dr. Lieberman's hearsay testimony." *Id.* at 60-61.

It is well settled that "counsel cannot be deemed ineffective for failing to anticipate a change in the law." *Commonwealth v. Parker*, 249 A.3d 590, 596 (Pa. Super. 2021) (quoting *Commonwealth v. Hughes*, 865 A.2d 761, 810 (Pa. 2004)). "We have held repeatedly that counsel's stewardship must be judged in light of the available alternatives and that he cannot be expected to raise motions unsupported by existing law." *Id.* (quoting *Commonwealth v. Miller*, 431 A.2d 233, 235 (Pa. 1981)).

"Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." *Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. 2001) (citation omitted). "We have held that the Confrontation Clause of the Pennsylvania Constitution affords defendants the same rights as the Sixth Amendment of the United States Constitution." *Commonwealth v. Yohe*, 39 A.3d 381, 384 n.4 (Pa. Super. 2012) (citation omitted). A previous panel of this Court described our jurisprudence in Confrontation Clause cases, starting with the Supreme Court

of the United States' decision in ***Crawford v. Washington***, 541 U.S. 36 (2004):

> The ***Crawford*** Court defined the statements covered by the Confrontation Clause as follows:
>
>> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to used prosecutorially, extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]
>
> ***Crawford***, 541 U.S. at 51-52 (internal citations and quotation marks omitted).
>
> In ***Melendez-Diaz v. Massachusetts***, 557 U.S. 305, 310 (2009), the Supreme Court determined that certificates of forensic analysis are within the "core class of testimonial statements" described by the ***Crawford*** Court. The Court ultimately held that the individuals who performed the forensic analyses were witnesses for the purposes of the Sixth Amendment, and thus the defendant "was entitled 'to be confronted with' [them] at trial." ***Id.*** at 311, citing ***Crawford***, 541 U.S. at 54 (internal quotation marks omitted).
>
> Following the High Court's announcement of ***Melendez-Diaz***, this court considered ***Commonwealth v. Barton-Martin***, 5 A.3d 363 (Pa. Super. 2010). In ***Barton-Martin***, the defendant was convicted of DUI-highest rate, which is a conviction that requires the admission of BAC into evidence. ***Id.*** at 366, 370. In an effort to meet that evidentiary requirement, the Commonwealth called the custodian of records from Hanover Hospital and introduced the defendant's BAC report as a business record. ***Id.*** at 368. The Commonwealth did not call the laboratory technician who performed the test on the defendant's blood sample to testify. ***Id.*** This court held that the admission of [the defendant's] BAC report through the custodian of records' testimony violated the

defendant's right to confrontation, absent any evidence that the laboratory technician was unavailable for trial and the defendant had a prior opportunity to conduct cross-examination. *Id.* at 369.

Shortly after *Barton-Martin* was decided, the Supreme Court of the United States announced its decision in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). In *Bullcoming*, the defendant was charged with driving while intoxicated and stood trial. *Id.* at 651. At trial, the prosecution sought to introduce a BAC report reflecting that the defendant's BAC was above the legal limit. *Id.* Instead of calling the analyst who signed the certification of the BAC report to testify at trial, the prosecution called another analyst from the same laboratory who was familiar with laboratory procedures. *Id.*

The High Court granted *certiorari* to determine whether the Confrontation Clause:

> permit[s] the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.

*Id.* at 657 (citation omitted). Ultimately, the Court disapproved of the type of "surrogate testimony" permitted by the trial court in *Bullcoming* because the surrogate witness could not "convey what the [analyst] performing the test knew or observed about the events [her] certification concerned, *i.e.*, the particular test and testing process [she] employed." *Id.* at 661 (footnote omitted).

*Commonwealth v. Hajdarevic*, 236 A.3d 87, 90-91 (Pa. Super. 2020).

In *Commonwealth v. Brown*, 139 A.3d 208 (Pa. Super. 2016), this Court held that autopsy reports are testimonial in nature, thereby invoking the Confrontation Clause. *Brown*, 139 A.3d at 216. Accordingly, testimony from the author of the report is required to satisfy the Confrontation Clause. *Id.*

Appellant's trial occurred nine years before this Court announced its decision in **Brown**. Because counsel cannot be deemed ineffective for failing to anticipate subsequent changes in the law, we discern no error by the PCRA court in rejecting Appellant's claim that trial counsel should have objected to Dr. Lieberman's testimony on Confrontation Clause grounds. Therefore, because Appellant's claim has no arguable merit, he is not entitled to relief. **See Parker**, 249 A.3d at 596; **Sandusky**, 203 A.3d at 1043.

## Use of Prior Statements During Trial

Appellant next contends that Attorney Farrell rendered ineffective assistance for failing to object "to the presentation, of substantive evidence, of witnesses' previous out-of-court statements." Appellant's Brief at 67. Specifically, Appellant alleges that the Commonwealth "presented four lay witnesses and eight police witnesses to testify about witnesses' prior statements, with the police testimony frequently consisting of the witness simply reciting, or reading, the previous statement into the record." **Id.** at 67-68 (some formatting altered; footnote omitted). Appellant also claims that Attorney Farrell was ineffective for failing to object to the trial court's jury instruction with regard to the use of previous statements. **Id.** at 68-69.

In his brief, Appellant concedes that counsel raised numerous objections to the use of prior statements throughout trial, as well as to the trial court's jury instructions. **See id.** at 68 (citing N.T. Trial, 2/23/07, at 17-23; N.T. Trial, 3/5/07, at 43-35, 53-54; N.T. Trial, 3/7/07, at 140; N.T. Trial, 3/8/07, at 19-23; N.T. Trial, 3/9/07, at 2-5); **id.** at 69 (citing N.T. Trial, 3/9/07, at

- 36 -

164). Because the record belies Appellant's claims that Attorney Farrell failed to object to the use of prior statements throughout trial, our analysis will be limited to the failure to raise this issue on direct appeal.

In the context of alleging ineffective assistance of Attorney Farrell for failing to raise this issue on direct appeal, Appellant's argument as to the prejudice prong of ineffective assistance of counsel is limited to: "[t]he appellate court probably would have granted relief had counsel raised this claim, thus counsel's failure also prejudiced [Appellant] on appeal." Appellant's Brief at 73.

Here, Appellant raises a boilerplate claim of prejudice resulting from Attorney Farrell's purported failure to raise this issue on direct appeal. As this Court has stated previously, a boilerplate allegation and bald assertion of prejudice "cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Sandusky*, 203 A.3d at 1044 (citing *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011)). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Id.* (citing *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted)). Accordingly, his claim of ineffective assistance of counsel must fail. *Id.*

### Appellant's Waiver of his Right to Testify at Trial

Appellant next contends that Attorney Farrell was ineffective in advising Appellant to waive his right to testify in his own defense at trial. Appellant's

Brief at 74. Specifically, Appellant argues that his decision not to testify was based solely on the advice of trial counsel. *Id.* at 78.

"The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." *Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa. Super. 2013) (citation omitted).

> In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Id.* (citation omitted). "Additionally, where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." *Sandusky*, 203 A.3d at 1075 (quoting *Commonwealth v. Rigg*, 84 A.3d 1080, 1086 (Pa. Super. 2014)) (some formatting altered).

> Instantly, the PCRA court reached the following conclusion:

> The record reflects that Appellant made his own informed decision, after consultation with counsel, not to testify at the guilt phase of his trial. The advice he received was not inaccurate or unreasonable, and it did not vitiate his ability to make his own knowing and intelligent choice.

> \* \* \*

> Here, counsel stated on the record that he had specifically advised Appellant not to testify at the guilt phase because Appellant was charged with capital murder and there was a chance that, if Appellant testified and the jury disbelieved him, it could have a detrimental impact on Appellant's ability to testify at the penalty

- 38 -

phase. This was not unreasonable advice. Appellant was, indeed, potentially facing the death penalty at that juncture, and counsel's apprehensions of the possible risks at the guilt phase were not unfounded.

PCRA Ct. Op. at 7-8.

The record reflects that Appellant knowingly, intelligently, and voluntarily waived his right to testify in his own defense. *See* N.T. Trial, 3/8/07, at 155-59. Appellant specifically stated that at no point during the course of trial had counsel not done anything requested by Appellant. *Id.* at 157-58. Appellant affirmatively stated that he was satisfied with his counsel. *Id.* at 158. Appellant re-affirmed his decision not to testify on his own behalf on the final day of trial, stating that he was not testifying due to the threat of the death penalty. N.T. Trial, 3/9/07, at 10.

As stated above, a defendant cannot subsequently claim ineffective assistance of counsel after having affirmatively waived his right to testify after an on-the-record colloquy. *See Sandusky*, 203 A.3d at 1075. Accordingly, we find no error on the part of the PCRA court in denying Appellant's PCRA petition on this issue and no relief is due. *See id.* at 1043.

### Ineffective Assistance of PCRA Counsel

In his final issue, Appellant raises a challenge to all previous PCRA counsel for "failing to raise meritorious claims completely, or in failing to fully, properly develop the claims that were raised, in the many petitions and arguments presented to the PCRA court." Appellant's Brief at 85. Appellant further states that he "was represented by six (6) different attorneys over the

twelve-year span while his PCRA petition was pending, some of whom took no action at all, while some filed amended or supplemental petitions." *Id.*[13] In his brief, Appellant raises a layered claim of ineffective assistance of counsel. *Id.* at 88.

It is axiomatic that if a petitioner cannot prove the underlying claims of ineffective assistance of counsel, then his derivative claims of PCRA counsel ineffectiveness must fail. *Chmiel*, 30 A.3d at 1128.

Here, as noted previously, Appellant has failed to establish his that his underlying claims had merit. Accordingly, he is not entitled to relief on his derivative claims concerning PCRA counsel's ineffectiveness. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

_____

[13] As noted by the Commonwealth, Appellant's most recent amended PCRA petition supersedes any previously filed PCRA petitions. The record reflects that Attorney Himebaugh filed the most recent amended PCRA petition on Appellant's behalf on September 28, 2021. *See* Commonwealth's Brief at 16 n.3; *see also, e.g.*, *Commonwealth v. Renchenski*, 52 A.3d 251, 259 (Pa. 2012). Accordingly, only Attorney Himebaugh's performance will be considered in determining whether Appellant has sufficiently pled and proven the three elements of ineffective assistance of counsel. *See Parrish*, 273 A.3d at 1004 n.11; *Sandusky*, 203 A.3d at 1043-44.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/5/2024</u>